**Case No. 13-16918**

(Consolidated with Nos. 13-16819, -16919, -16929, -16936, -17028 & -17097)

_____

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

_____

ANGEL **FRALEY**, et al.,

*Plaintiffs-Appellees*,

**C.M.D.**, et al.,

*Intervenor-Plaintiffs-Appellees*,

JOHN **SCHACHTER** (on behalf of himself and his minor son S.M.S.), KIM PARSONS (on behalf of herself and her minor daughter C.B.P.), ANN LEONARD (on behalf of herself and her minor daughter D.Z.), R.P. (through her mother Margaret Becker), and J.C. (through his father Michael Carome), Class Members,

*Objectors-Appellants*,

v.

**FACEBOOK, INC.**,

*Defendant-Appellee*.

_____

Appeal from the U.S. District Court for the Northern District of California
(Hon. Richard Seeborg, United States District Judge)

_____

**OPENING BRIEF FOR APPELLANTS SCHACHTER ET AL.**

Scott Michelman
Scott L. Nelson
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Appellants Schachter et al.*

February 13, 2014

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ........................................................................1

JURISDICTION...........................................................................2

ISSUE PRESENTED ....................................................................2

STATEMENT OF THE CASE AND FACTS ........................................2

    A. The Class Action ...............................................................2

    B. The Approved Settlement Agreement.......................................7

    C. The Schachter Objectors....................................................11

    D. The Decision Below .........................................................12

    E. Subsequent Developments..................................................14

SUMMARY OF ARGUMENT .......................................................16

STANDARD OF REVIEW ...........................................................18

ARGUMENT ...........................................................................19

    I.    The Settlement Should Have Been Rejected Because It Authorizes Facebook To Use A Minor's Likeness For Advertising Without Parental Consent, In Violation Of The Laws Of Seven States ...............19

    II.   The District Court's Reasons For Disregarding The Violations Of State Laws Were Legally Erroneous And Reflect A Misunderstanding Of The District Court's Role Under Rule 23(e) ........................28

        A. A settlement may not authorize a party to violate a state statute even if that statute is the basis for one of the causes of action being settled ...........................................................................28

i

B. The district court erred in disregarding the laws of states other than California ......................................................................31

C. State laws prohibiting the use of a minor's likeness without parental consent are not preempted ........................................33

CONCLUSION .................................................................................39

STATEMENT OF RELATED CASES ..................................................40

CERTIFICATE OF COMPLIANCE .....................................................40

CERTIFICATE OF SERVICE .............................................................40

## <u>TABLE OF AUTHORITIES</u>

### CASES

*In re Bluetooth Headset Products Liability Litigation*,
　　654 F.3d 935 (9th Cir. 2011) ................................................................18, 19

*Brooks v. State Board of Elections*,
　　848 F. Supp. 1548 (S.D. Ga. 1994) ..............................................................20

*Cohen v. Facebook, Inc.*,
　　No. BC 444482 (L.A. Super. Ct. Sept. 22, 2011)........................................37

*Comcast Corp. v. Behrend*,
　　133 S. Ct. 1426 (2013)...................................................................................30

*Durrett v. Housing Authority*,
　　896 F.2d 600 (1st Cir. 1990)..........................................................................20

*Grunin v. International House of Pancakes*,
　　513 F.2d 114 (8th Cir. 1975) ..................................................................19, 31

*Ibarra v. Texas Employment Commission*,
　　823 F.2d 873 (5th Cir. 1987) .........................................................................20

*Isby v. Bayh*,
　　75 F.3d 1191 (7th Cir. 1996) ...................................................................19, 31

*Nachshin v. AOL, LLC*,
　　663 F.3d 1034 (9th Cir. 2011) .......................................................................18

*National Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*,
　　582 F.3d 30 (1st Cir. 2009)...............................................................19, 20, 31

*Officers for Justice v. Civil Service Commission*,
　　688 F.2d 615 (9th Cir. 1982) .........................................................................18

*Robertson v. National Basketball Ass'n*,
　　556 F.2d 682 (2d Cir. 1977) .............................................................19, 29, 31

iii

*Sierra Club, Inc. v. Electronic Controls Design, Inc.*,
    909 F.2d 1350 (9th Cir. 1990) ........................................................21, 29, 31

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002)................................................................................37, 38

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .........................................................................19

*United States v. City of Miami*,
    614 F.2d 1322 (5th Cir. 1980) ......................................................................18

*United States v. City of Miami*,
    664 F.2d 435 (5th Cir. 1981) (en banc) .......................................................20

*In re Veritas Software Corp. Securities Litigation*,
    496 F.3d 962 (9th Cir. 2007) ........................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).....................................................................................30

*Williamson v. Mazda Motor of America, Inc.*,
    131 S. Ct. 1131 (2011).....................................................................................38

*Wyeth v. Levine*,
    555 U.S. 555 (2009)..........................................................................................33

## STATUTES, REGULATIONS, AND RULES

15 U.S.C. § 6501 ....................................................................................34, 35, 36

15 U.S.C. § 6502........................................................................13, 14, 34, 35, 36

28 U.S.C. § 1291 ...............................................................................................2

28 U.S.C. § 1332 ..............................................................................................2

47 U.S.C. § 230..................................................................................................6

16 C.F.R. § 312.2 ........................................................................................35, 36

16 C.F.R. § 312.3 ....................................................................34, 36

Fed. R. App. P. 4(a)(1)(A) .......................................................2

Fed. R. Civ. P. 23(e)(2)............................................................18

Cal. Civ. Code § 3344 .......................................................passim

Fla. Stat. Ann. § 540.08 ......................................21, 22, 24, 27

N.Y. Civ. Rights Law § 50 .............................12, 21, 22, 24, 27

N.Y. Civ. Rights Law § 51 ....................................................24

Okla. Stat. Ann. tit. 21, § 839.1 ........................21, 23, 24, 27

Okla. Stat. Ann. tit. 21, § 839.2 ...........................................24

Tenn. Code Ann. § 47-25-1105 .....................12, 21, 23, 24, 27

Va. Code Ann. § 8.01-40 ...............................12, 21, 23, 24, 27

Wis. Stat. Ann. § 995.50 ....................................21, 23, 24, 27

## ADDITIONAL AUTHORITIES

Campaign for Commercial-Free Childhood, Statement,
    *at* https://www.facebook.com/help/326113794144384 ...............................15

Facebook, *Ad and Sponsored Story Basics* (section entitled "Sponsored
    Story Basics"),
    *at* https://www.facebook.com/help/326113794144384 ..................................3

Facebook, *An Update to Facebook Ads*,
    *at* https://www.facebook.com/notes/facebook-and-privacy/an-update-to-
    facebook-a%20ds/643198592396693 .........................................................14

Natasha Singer, *They Loved Your G.P.A. Then They Saw Your Tweets*,
    N.Y. Times, Nov. 9, 2013................................................................4

## <u>INTRODUCTION</u>

This appeal is from the approval of a class-action settlement that authorizes the violation of seven states' privacy laws.

The underlying case seeks relief from the online social network Facebook for its practice of deploying its users' names and images, without their consent, for advertisements in which the users appear to be endorsing Facebook sponsors with which the users have interacted, however briefly, via Facebook. Facebook's advertising practice applies to its under-18 users, in spite of several state laws explicitly prohibiting the use of a minor's image for advertising without parental consent.

A putative class of Facebook users sued Facebook for violations of California privacy and unfair competition law, and class counsel agreed to a settlement with Facebook. The settlement authorizes Facebook to continue to use minors' images for advertising without parental consent — in direct violation of the laws of seven states, including California, where Facebook is located. Nonetheless, the district court approved the settlement.

In this appeal, a group of objectors who are either parents of teenagers or teenagers proceeding through their parents seek to vindicate state-law safeguards against the exploitation of minors online. A federal court may not approve a settlement that authorizes a party to violate a state law. This settlement does just

1

that, permitting Facebook to flout laws designed to protect children from being co-opted into serving as unpaid endorsers in advertisements and from having a momentary online interaction as a teenager immortalized on the internet — potentially to the minor's future personal embarrassment or professional detriment.

The district court's approval of the settlement should be vacated.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act). This Court has jurisdiction over this appeal from the district court's final judgment. 28 U.S.C. § 1291. The district court's order granting final approval of settlement on August 26, 2013, ER 1, and corresponding judgment entered September 19, 2013, ER 22, disposed of all parties' claims, and this appeal was timely filed within thirty days after the judgment, on September 24, 2013. ER 171; Fed. R. App. P. 4(a)(1)(A).

## ISSUE PRESENTED

Did the district court err in approving a class settlement that authorizes a party to violate state laws?

## STATEMENT OF THE CASE AND FACTS

### A.    The Class Action

The class of plaintiffs consists of members of the online social networking site Facebook, which allows users to create and maintain personal accounts on

2

which they can post information about themselves, designate other users as "friends," and interact with "friends" in various ways. ER 57-58, 60 (Second Am. Compl. ("SAC") ¶¶ 13, 18). The actions users can take on Facebook include creating a "post" consisting of text, photographs, or videos chosen by the user; "liking" content by clicking on a "Like" button displayed alongside that content either on Facebook or elsewhere on the internet; and using an external application or game that interacts with Facebook. ER 60-61 (SAC ¶¶ 20, 23, 25, 26).

Plaintiffs' class-action complaint concerns a Facebook advertising practice that Facebook until recently called "Sponsored Stories" and which has been ongoing since January 2011. ER 61 (SAC ¶ 26). Under this program, when Facebook determines that a user has performed one of the actions listed above pertaining to any of Facebook's advertisers (unless the advertiser has opted out of the program), Facebook creates an advertisement that displays the user's name, likeness, or image in a manner that suggests the user endorses the advertiser or its product. ER 61-62, 68-71, 85-86, 94-97 (SAC ¶¶ 26-29, 65-68, 76-84 & Exs. 2, 6, 7) (describing and showing examples of Sponsored Stories); *see also* Facebook, *Ad and Sponsored Story Basics* (section entitled "Sponsored Story Basics"), *at* https://www.facebook.com/help/326113794144384 (last visited Feb. 11, 2014). This advertisement is visible within Facebook on webpages that can be viewed by other Facebook users. ER 61 (SAC ¶¶ 26-27).

3

As alleged in the complaint, Facebook's officers believe that advertisements containing endorsements from someone a user knows are highly valuable to advertisers. Facebook CEO Mark Zuckerberg stated in an interview that "[n]othing influences people more than a recommendation from a trusted friend." ER 64 (SAC ¶ 43). Facebook COO Sheryl Sandberg has said "[m]arketers have always known that the best recommendation comes from a friend." *Id.* The "Guide to the New Facebook Ads Manager" states that advertisements "shown with the names of people's friends are twice as effective as those without." ER 64 (SAC ¶ 44).

As the complaint points out, users under age 18 might interact with Facebook sponsors — thereby triggering Facebook's creation of a Sponsored Story — in a variety of ways and for a variety of reasons other than endorsement of the advertiser or its products: In addition to clicking a "Like" button in relation to a sponsor because she genuinely likes that sponsor, a user could interact with a sponsor to obtain access to discounts, to show support for a social cause, or to see a funny image. ER 61 (SAC ¶ 25). And Facebook's Sponsored Stories can also be created based on users' other actions and interactions, including posting messages, using an application, or playing a game. ER 61 (SAC at ¶ 26).

What a minor does online can have consequences: A study recently featured in the New York Times reported that nearly one-third of college admissions officers check applicants' social network pages to learn more about them. *See*

4

Natasha Singer, *They Loved Your G.P.A. Then They Saw Your Tweets*, N.Y. Times, Nov. 9, 2013. Thus, whether a minor user's interaction with a Facebook advertiser is intended to convey affinity or is a means to an end, an accident, a joke, or an attempt to show off or gain acceptance among peers, it may be contrary to her best interests for an ad showing her endorsing the advertiser to be broadcast to all her social-media connections and thereafter to be available on the internet for college admissions officers, future employers, professional contacts, romantic interests, law enforcement, or anyone else to see.

The complaint alleges that Facebook did not request or obtain class members' consent to appear in Sponsored Stories. ER 61, 63-64, 67 (SAC ¶¶ 28, 36-41, 62). In addition, the complaint alleges that users were unaware that their names, likenesses, or images were being deployed by Facebook in this manner, and that class members have not received any compensation for the use of their names, likenesses, or images in Sponsored Stories. ER 61, 65 (SAC ¶¶ 26, 47). The complaint specifically alleges that parents of class members who were minors did not provide consent to the use of their children's images and identities in advertisements, nor did Facebook seek their consent. ER 64, 67 (SAC ¶¶ 41, 62).

The named plaintiffs brought this class action on behalf of all Facebook users in the United States whose names, photographs, likenesses, or identities were used by Facebook in a Sponsored Story, and for a "minor subclass" consisting of

5

individuals who "have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age." ER 72-73 (SAC ¶ 95). The complaint claims that Facebook's misappropriation of class members' names, likenesses, or images without their consent and for a commercial purpose violated California Civil Code § 3344 ("§ 3344"), California Unfair Competition Law ("UCL"), and the common-law doctrine of unjust enrichment. ER 75-79.

Facebook moved to dismiss, claiming that the named plaintiffs lacked standing, that Facebook was entitled to immunity under the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230, and that the complaint failed to state a claim for various reasons. ER 99 (order granting in part and denying in part motion to dismiss, also available at 830 F. Supp. 2d 785). In December 2011, the district court denied the motion to dismiss in large part, holding that the named plaintiffs alleged injury sufficient both to confer standing and to satisfy the injury element of their misappropriation claim; that Facebook is not immune under the CDA; that Sponsored Stories do not fall within the "newsworthiness" exception to § 3344's consent requirement; and that lack of consent is a disputed issue of fact because Facebook's terms of use do not clearly provide that users consent to use of their likenesses in advertising. ER 106-26. The Court also held that the complaint made out the elements of a UCL claim. ER 126-33. For these reasons, the court denied the motion to dismiss the § 3344 and UCL

claims; the court dismissed only the unjust enrichment claim, which it concluded is not a recognized cause of action under California law. ER 133-34.

In June 2012, class counsel and Facebook proposed a classwide settlement agreement that would have required Facebook to make a $10 million cy pres payment, to change its Statement of Rights and Responsibilities, and to provide its users with more information about and control over how their names and likenesses would be used. ER 136 (order denying preliminary approval of settlement). In August 2012, the district court denied preliminary approval of that proposed settlement, because of concerns about the propriety of a settlement providing no monetary relief to the class members, the "clear sailing" provision for and size of the attorneys' fees award, and the lack of specificity regarding the policy changes Facebook would make. ER 137-42. The court also advised the parties that any renewed motion for settlement approval should discuss the issue of obtaining valid consent with respect to minors. ER 141.

**B.    The Approved Settlement Agreement**

A few months later, the parties proposed a second settlement that was similar to the one that the district court refused to approve. This time the court — in the judgment from which objectors now appeal — approved it. ER 1-2.

The settlement (as modified slightly by the court in respects not relevant to this appeal) provides that all class members who did not opt out release all known

or unknown claims against Facebook (and related entities and individuals) that were or could have been asserted in the case. ER 44 (Amended Settlement Agreement and Release ("ASAR") § 5.2). In exchange, Facebook will implement certain policy changes for a period of two years, ER 31-33 (ASAR § 2.1), and create a $20 million settlement fund. ER 33 (ASAR § 2.2). From the fund, the small subset of class members who filed claims will receive $15 each, three named plaintiffs will receive much larger incentive awards, and class counsel will receive fees and costs, with the remainder to go to designated cy pres recipients. ER 33-36 (ASAR §§ 2.2-2.6); ER 5-6 (approving settlement as modified).[1] The district court set the incentive awards at $1500 each and awarded class counsel between $4 and $5 million in fees and $236,000 to $271,000 in costs. ER 21.[2]

---

[1]    The cy pres recipients designated in the settlement agreement are: Center for Democracy and Technology, Electronic Frontier Foundation, MacArthur Foundation, Joan Ganz Cooney Center, Berkman Center for Internet and Society at Harvard Law School, Information Law Institute at NYU Law School, Berkeley Center for Law and Technology at Berkeley Law School, Center for Internet and Society at Stanford Law School, High Tech Law Institute at Santa Clara University School of Law, Campaign for a Commercial-Free Childhood, Consumer Federation of America, and Consumer Privacy Rights Fund. ER 35-36 (ASAR § 2.4(a)). One of the recipients, Campaign for a Commercial-Free Childhood, has announced it will not accept the money. *See infra* page 15.

[2]    Class counsel will receive 25% of what remains in the $20 million fund after deducting costs (between $236,000 and $271,000), incentive awards ($4500), and expenses of settlement administration. ER 21.

The aspects of the settlement relevant to this appeal are the changes to Facebook's policies. ER 31-33 (ASAR § 2.1). The settlement requires Facebook to add to its "Statement of Rights and Responsibilities" language indicating that:

> You [i.e., the user] give us [i.e., Facebook] permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information. If you have selected a specific audience for your content or information, we will respect your choice when we use it.

ER 31 (ASAR § 2.1(a)). The agreement thus addresses Facebook's previously unauthorized use of its users' images for advertising purposes not by ending the practice, but by surrendering class members' objection to that practice and replacing it with blanket consent.

The basic consent provision is applicable to minor users as well as to adults, but the prescribed language goes on to address minors specifically as follows:

> If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.

*Id.* This provision purports to authorize the use of a minor user's image through the minor's representation of parental consent.

The settlement agreement limits the blanket consent it purports to extract from minors in only two ways. First, under the settlement, Facebook agrees to

9

"encourage" new users to identify family members in their Facebook accounts. ER 32 (ASAR § 2.1(c)(ii)). When a minor child and a parent who are *both* Facebook users *both* confirm their relationship, Facebook will allow the parent to block the use of the minor child's name or likeness in Sponsored Stories. ER 32 (ASAR § 2.1(c)(ii), (iii)). Facebook will also "enable[]" a minor user to indicate that his or her parents are *not* Facebook users, in which case Facebook will not use that minor's name or likeness in Sponsored Stories until the minor reaches age 18, the minor indicates that his or her parents are on Facebook, or a confirmed parental relationship with the minor is established. ER 32 (ASAR § 2.1(c)(iii)).

The agreement does not, however, provide that Facebook will *require* a minor to indicate whether his or her parents are Facebook users. Thus, except where a minor affirmatively indicates his or her parents are not on Facebook, or where a minor and his or her parent each confirm their relationship and the parent then directly exercises controls, the agreement allows Facebook to continue to use minors' images in advertisements based on minors' *representations* that their parents have consented rather than any affirmative expression of consent by the parents themselves.

The settlement requires Facebook to maintain the policy changes for at least two years after the settlement becomes final; Facebook is under no obligation to maintain these changes after that time. ER 33 (ASAR § 2.1).

10

## C. The Schachter Objectors

This appeal is brought by class members John Schachter, on behalf of himself and his minor son S.M.S.; Kim Parsons, on behalf of herself and her minor daughter C.B.P.; Ann Leonard, on behalf of herself and her minor daughter D.Z.; the minor child R.P. (through her mother Margaret Becker); and the minor child J.C. (through his father Michael Carome) — collectively, the "Schachter objectors" — who objected to the proposed settlement in the district court. ER 152-54, 157-66 (Schachter, Parsons, Leonard, Becker, and Carome declarations).[3]

Facebook has created Sponsored Stories involving the Schachter objectors. For instance, Michael Carome saw a Sponsored Story featuring his son J.C., ER 166 (¶ 7); Margaret Becker's daughter R.P. saw a Sponsored Story featuring herself, ER 164 (¶ 7); D.Z. saw a Sponsored Story featuring her mother Ann Leonard, ER 161 (¶ 8); and Kim Parsons' daughter C.B.P. received email notification that she is a class member because Facebook has used her in one or more Sponsored Stories, ER 158 (¶ 7). The objector-appellant parents know that their children use the "Like" function on Facebook and will continue to do so. ER 153 (¶ 6); ER 158 (¶ 6); ER 161 (¶ 6); ER 164 (¶ 6); ER 166 (¶ 6). All of the

---

[3]    At the district court, the five Schachter objectors were joined by the minor child J.J.R. (through his mother Judy Reidel). ER 155-56 (Reidel declaration). J.J.R. is not a party to this appeal.

parents object to the use of their children's names, images, and/or likenesses without parental consent. ER 153 (¶ 13); ER 158 (¶ 13); ER 161 (¶ 13); ER 164 (¶ 11); ER 166 (¶ 11). All of the objector-appellants reside in states (California for Leonard and her daughter, New York for Becker and her daughter, Tennessee for Parsons and her daughter, and Virginia for Schachter and Carome and their respective sons) that prohibit the use of a minor's likeness for advertising without parental consent. *See* Cal. Civ. Code § 3344(a); N.Y. Civ. Rights Law § 50; Tenn. Code Ann. § 47-25-1105(a); Va. Code Ann. § 8.01-40(A).

At the final approval hearing on June 28, 2013, the Schachter objectors (through counsel) presented argument in support of their objections, chief among which was that the settlement authorizes the violation of state laws protecting minors from the use of their images for advertising without parental consent.[4]

**D. The Decision Below**

On August 26, 2013, the district court approved the settlement, deeming the changes to Facebook's policies, small monetary payment to class members, cy pres

---

[4]     The Schachter objectors also argued below that the settlement should be rejected because the monetary relief is de minimis, the injunctive relief expires after two years and is inadequate to prevent future violations of class members' rights, the release is overly broad, and Facebook's plans to revamp its Sponsored Stories program would allow it to avoid its obligations under the settlement.

payment, and release to reflect an adequate compromise of the litigation in light of plaintiffs' chance of success. ER 4-11.

The court rejected the objection regarding state privacy protections for minors because, in the court's view, the objectors "would have the Court decide — in plaintiffs' favor — the *merits* of the dispute," and addressing the merits would be inappropriate in evaluating a settlement. ER 12 (emphasis in original). Moreover, "even to the extent some preliminary analysis of the merits may be appropriate," the court concluded that the settlement was permissible. *Id.* The court opined that the federal Children's Online Privacy Protection Act (COPPA) "may well" preempt state laws requiring parental consent to use a minor's likeness for advertising. *Id.* In the court's view, because COPPA regulates the collection and use of the personal information of children *under* 13, and COPPA "expressly preempts state requirements that are 'inconsistent with' this 'treatment,'" ER 13 (quoting 15 U.S.C. § 6502(d)), COPPA "could bar any efforts by plaintiffs to use state law to impose a parental consent requirement for minors *over* the age of 13." *Id.* (emphasis added). In one sentence, the court dismissed as irrelevant the laws of states other than California: "The suggestion that the laws of other states might provide additional protection for minors fails both because objectors have neither demonstrated that the supposed differences in law are material, nor that choice-of-law principles would permit the application of such law in any event." *Id.*

13

Finally, the court overruled all "remaining objections" as "suggestions as to how the settlement might be made *better*" rather than reasons to find the settlement unfair and inadequate. *Id.* (emphasis in original).

### E. Subsequent Developments

On January 9, 2014, Facebook announced it would be ending the program called "Sponsored Stories"; however, Facebook explained that "social context — stories about social actions [a user's] friends have taken, such as liking a page or checking in to a restaurant — is now eligible to appear next to all ads shown to friends on Facebook." Facebook, *An Update to Facebook Ads*, *at* https://www.facebook.com/notes/facebook-and-privacy/an-update-to-facebook-a%20ds/643198592396693 (last visited Feb. 11, 2014). The major difference between Facebook's new practice and Sponsored Stories appears to be that "marketers will no longer be able to purchase sponsored stories separately." *Id.* What has not changed is that Facebook intends to continue to use the images of its users, including the images of minors, in advertising.

In approving the settlement, the district court overruled the Schachter objectors' objection that Facebook's ability to modify or rename the program would nullify any user protections the settlement provides regarding "Sponsored Stories." ER 7 n.6 (responding to argument made in the Schachter objectors' supplemental filing, ER 168-70). Accordingly, the agreement, as construed by the

14

district court, applies to Facebook's continuing practice of using its members' likenesses for advertising, regardless of the name Facebook gives this practice.

Indeed, under the settlement's required revisions to Facebook's Statement of Rights and Responsibilities, the user "give[s] us [i.e., Facebook] permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us," and minor users "represent that at least one of your [i.e., the minor's] parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf," without regard to whether Facebook's advertising is called a "Sponsored Story" or something else. ER 31 (ASAR § 2.1(a)). Thus, notwithstanding Facebook's decision to stop using the name "Sponsored Stories," the settlement agreement authorizes Facebook's continued use of minors' images for advertising on the basis of minors' representations of parental consent rather than actual parental consent.

On February 13, 2014, one of the designated cy pres recipients, Campaign for a Commercial-Free Childhood (CCFC), announced that it will not accept the cy pres award because the settlement terms that purport to protect minors' privacy are "hollow" and "meaningless." *See* Campaign for Commercial-Free Childhood, Statement, *at* http://commercialfreechildhood.org/fraley. CCFC has filed an amicus letter in support of the Schachter objectors.

15

## SUMMARY OF ARGUMENT

The settlement approved by the district court perpetuates and purports to authorize ongoing violations of the laws of multiple states by permitting Facebook to continue using minors' likenesses for advertising without parental consent. Seven states, including all the home states of the Schachter objectors, have laws specifically prohibiting the commercial use of a minor's likeness without the consent of his or her parent. The proposed settlement therefore fails to meet a threshold requirement of a valid, court-approved class action settlement: that the terms of the settlement be lawful.

In approving this settlement, the district court sidestepped the question of the settlement's lawfulness by recharacterizing the question as one about the merits of the lawsuit. The district court concluded that because one of the statutes that objectors claim the settlement authorizes Facebook to violate (California Civil Code § 3344) is also the basis for one of the plaintiff class's causes of action in the underlying suit, the objection that the settlement authorizes statutory violations is a disputed legal question about the merits of the underlying case, not a question about the fairness, adequacy, and reasonableness of the settlement. This logic is flawed: As part of its review under Rule 23(e), the court has an obligation to ensure the lawfulness of the settlement before approving its imposition on members of the class. It may not dismiss the question of the settlement's

lawfulness because that question has some overlap with questions regarding the merits of the underlying case. Moreover, whether a statute makes a specific defendant liable to a specific class of plaintiffs for specific past conduct is a question analytically distinct from whether a settlement authorizes future conduct that violates the statute.

The district court's analysis focused exclusively on whether California law was violated, save for one sentence about whether differences among state laws are "material" and whether they could be given effect under choice-of-law principles. This court thus ignored the independent force of the laws of six other sovereign states — Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin — that have a right to expect that federal courts will not sanction settlements that authorize or contemplate the violation of their laws.

Finally, the district court erred in suggesting that the relevant state laws may be preempted by COPPA, which regulates the collection and use of personal information of children under 13. The Supreme Court has made clear that Congress's decision not to regulate in a particular area (here, regarding the online privacy of individuals between 13 and 18 years old) does not preempt states' ability to regulate in that area absent a specific showing of congressional intent to preempt such regulation.

The district court's approval of the settlement should be vacated.

17

## STANDARD OF REVIEW

A district court may approve a class action settlement "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The primary concern of this subsection is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Another court of appeals has aptly described the role of a judge reviewing a settlement as that of a "fiduciary serving as guardian for the unrepresented class members." *United States v. City of Miami*, 614 F.2d 1322, 1331 (5th Cir. 1980).

This Court reviews a district court's approval of a class action settlement for abuse of discretion, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011), with any legal questions reviewed de novo, *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 968 (9th Cir. 2007). One way a court can abuse its discretion is to fail to apply the correct legal standard. *Nachshin*, 663 F.3d at 1038.

In evaluating the substantive fairness of a proposed settlement, courts look to a variety of factors, including the strength of the case, the risk and expense of litigation, the stage of the case and extent of discovery, and the amount offered in settlement, among others. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). These factors do not constitute a rigid test; rather, "[t]he

18

factors in a court's fairness assessment will naturally vary from case to case." *Id.* at 946; *accord Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Of central relevance to this appeal is a basic prerequisite for settlement approval: that the settlement agreement itself be lawful and not authorize clearly illegal conduct. *See, e.g., Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009); *Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996); *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

## **ARGUMENT**

### I.    **The Settlement Should Have Been Rejected Because It Authorizes Facebook To Use A Minor's Likeness For Advertising Without Parental Consent, In Violation Of The Laws Of Seven States.**

"[A] [class action] settlement that authorizes the continuation of clearly illegal conduct cannot be approved." *Robertson*, 556 F.2d at 686; *accord Isby*, 75 F.3d at 1197; *Grunin*, 513 F.2d at 123; *see also Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 ("If third parties will be affected, the court must find that the settlement will not be unreasonable or legally impermissible as to them." (citation, internal quotation marks, and source's alteration marks omitted)). The baseline requirement of lawfulness is integrally tied to the Rule 23 standard for settlement approval: "In evaluating a proposed settlement agreement in a class action, a court

19

must examine the totality of the circumstances and must determine, under that broad inquiry, whether the proposed settlement is fair, adequate, reasonable, *and legal.*" *Brooks v. State Bd. of Elections*, 848 F. Supp. 1548, 1552 (S.D. Ga. 1994) (emphasis added); *see also id.* at 1577 (denying approval where "certain provisions . . . would violate Georgia statutory and constitutional law").

A closely related line of cases concerning consent decrees has noted the similarities between class settlements and consent decrees and fleshed out the reasons courts review both types of agreements for lawfulness: "the court should . . . examine [a consent decree] carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence." *Ibarra v. Tex. Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987) (quoting *United States v. City of Miami*, 664 F.2d 435, 441 (5th Cir. 1981) (en banc) (Rubin, J., concurring)); *accord Durrett v. Housing Auth.*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 (applying consent-decree standard from *Durrett* to class-action settlement); *Ibarra*, 823 F.2d at 878 (likening judicial review of consent decrees to judicial review of class action settlements).

Likewise, this Court has recognized the similarities between a class-action settlement and a consent decree and has admonished that a district court should enter the latter only "if the court decides that it is fair, reasonable and equitable and

*does not violate the law* or public policy." *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (emphasis added).

The settlement approved by the district court here fails the baseline standard of lawfulness. By allowing Facebook to use the images of minors for advertising without the express consent of the minors' parents, the settlement agreement authorizes Facebook's ongoing violation of explicit statutory protections for minors in multiple states where class members, including the Schachter objectors, reside.

Seven states — California, Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin — require parental consent for the commercial use of a minor's likeness. Cal. Civ. Code § 3344(a); Fla. Stat. Ann. § 540.08(1), (6); N.Y. Civ. Rights Law § 50; Okla. Stat. Ann. tit. 21, § 839.1; Tenn. Code Ann. § 47-25-1105(a); Va. Code Ann. § 8.01-40(A); Wis. Stat. Ann. § 995.50(2)(b). These laws are unambiguous. As to the use of the images of living persons,[5] they provide, respectively, as follows:

In California, "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of,

---

[5]    In each of the following quotations, statutory language dealing with the likenesses of deceased persons has been omitted for the sake of brevity.

products, merchandise, goods or services, without such person's prior consent, *or, in the case of a minor, the prior consent of his parent or legal guardian*, shall be liable . . . ." Cal. Civ. Code § 3344(a) (emphasis added).

In Florida, "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by: (a) [s]uch person; or (b) [a]ny other person, firm or corporation authorized in writing by such person to license the commercial use of her or his name or likeness . . . ," Fla. Stat. Ann. § 540.08(1), and "[a]ny consent provided for in subsection (1) *shall be given on behalf of a minor by the guardian of her or his person or by either parent*." Fla. Stat. Ann. § 540.08(6) (emphasis added).

In New York, "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, *or if a minor of his or her parent or guardian*, is guilty of a misdemeanor." N.Y. Civ. Rights Law § 50 (emphasis added).

In Oklahoma, "Any person, firm or corporation that uses for the purpose of advertising for the sale of any goods, wares or merchandise, or for the solicitation of patronage by any business enterprise, the name, portrait or picture of any

person, without having obtained, prior or subsequent to such use, the consent of such person, *or, if such person is a minor, the consent of a parent or guardian* . . . is guilty of a misdemeanor." Okla. Stat. Ann. tit. 21, § 839.1 (emphasis added).

In Tennessee, "Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, *or, in the case of a minor, the prior consent of such minor's parent or legal guardian* . . . shall be liable to a civil action." Tenn. Code Ann. § 47-25-1105(a) (emphasis added).

In Virginia, "Any person whose name, portrait, or picture is used without having first obtained the written consent of such person . . . *or if a minor, the written consent of his or her parent or guardian*, for advertising purposes or for the purposes of trade, such persons may maintain a suit . . . against the person, firm, or corporation so using such person's name, portrait, or picture[.]" Va. Code Ann. § 8.01-40(A) (emphasis added)

In Wisconsin, "invasion of privacy" is a statutory tort, *see* Wis. Stat. Ann. § 995.50(1), and is defined to include "[t]he use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without

23

having first obtained the written consent of the person *or, if the person is a minor, of his or her parent or guardian*." Wis. Stat. Ann. § 995.50(2)(b) (emphasis added).

Of these seven states, four (California, Florida, Virginia, and Wisconsin) provide for civil liability for violations. *See* Cal. Civ. Code § 3344(a); Fla. Stat. Ann. § 540.08(2); Va. Code Ann. § 8.01-40(A); Wis. Stat. Ann. § 995.50(1). In the other three (New York, Oklahoma, and Tennessee), the use of a minor's likeness without parental consent is a crime as well as the basis for a private right of action. *See* N.Y. Civ. Rights Law §§ 50, 51; Okla. Stat. Ann. tit. 21, §§ 839.1, 839.2; Tenn. Code Ann. § 47-25-1105(a)-(b).

By authorizing the use of a minor's likeness for advertising without parental consent, the settlement approved in this case violates the explicit parental-consent requirements of these states. Using a minor's image based on the minor's *representation* that a parent has consented is not the same as actually obtaining the parent's consent; on the contrary, it effectively *dispenses* with parental consent requirements by permitting a minor unilaterally to consent to the use of his or her image.

Although the settlement includes additional measures that purport to increase parental involvement, none of these provisions requires parental consent before Facebook uses a minor's likeness in advertisements. First, the settlement

24

provides that Facebook will establish a method by which family members may (but need not) identify their relationships to one another in their Facebook profiles. ER 32 (ASAR § 2.1(c)(ii)). If a parent and minor child *both* take this affirmative step on Facebook to identify their relationship to each other, Facebook will give the parent the opportunity to take the additional step of opting the child out of the use of his or her name and likeness in Sponsored Stories. ER 32 (ASAR § 2.1(c)(iii)). Second, if a minor child voluntarily indicates that his or her parents are not Facebook members, Facebook will not use his or her name or likeness in Sponsored Stories. *Id.*

These two situations in which Facebook has agreed not to use a minor's likeness in advertisements are narrow and depend on affirmative actions by the minor user (and, in one case, his or her parent as well). It is easy to imagine that many minors would not want their parents involved in their social lives — of which Facebook is an integral part in the modern era — and therefore will not confirm their relationship with their parents. The settlement does not specify what steps Facebook will take to "encourage" minor users to identify their parents, ER 32 (ASAR § 2.1(c)(ii)), or how prominently it will display the "control in minor users' profiles that enables each minor user to indicate that his or her parents are not Facebook users," ER 32 (ASAR § 2.1(c)(iii)), so minors may never be informed that they have the option to take this step. And even if minors are

25

presented with the option to indicate that their parents are not on Facebook, some minors will probably decline to do so, fearing that doing so might somehow jeopardize their ability to use Facebook. The settlement does not require Facebook to inform minors that the reason they might wish to indicate whether their parents are on Facebook is to affect whether Facebook will use minors' images in advertisements.

Even assuming that some minor users will identify their parents, the settlement agreement's prophylactic measures provide no assurance that any use of a child's image reflects affirmative parental consent. The settlement does not require that minors and parents confirm their relationship, and it does not require that a minor indicate the membership status of his or her parents. For minors who indicate nothing regarding their parents, the settlement does not require that Facebook refrain from using their names or likenesses. Quite the opposite: the default rule in such circumstances is that Facebook will act on the assumption of parental consent based solely on the child's unilateral "representation."

Even if a parent and minor do confirm their relationship, the parent must then take an additional affirmative step, using the parental controls, to opt the child out of Sponsored Stories — in spite of statutory requirements under the laws of California, Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin that advertising using a child's likeness requires parental *consent*, which

26

(depending on the state) must be obtained "prior" to the use of the child's image, Cal. Civ. Code § 3344(a); Tenn. Code Ann. § 47-25-1105(a), or be "express," Fla. Stat. Ann. § 540.08(1), or be in writing, N.Y. Civ. Rights Law § 50; Va. Code Ann. § 8.01-40(A); Wis. Stat. Ann. § 995.50(2)(b). The settlement thus permits Facebook to substitute for prior, express, or written consent the parent's passive failure to object.[6] The purported safeguards are no safeguards at all.[7]

In sum, the settlement agreement does not provide that parental consent will be obtained before Facebook uses a minor's image for advertising. Rather, the settlement authorizes Facebook's practice of creating advertisements with images of users it knows to be minors without their parents' consent, in violation of the laws of seven states. The district court therefore should not have given judicial sanction to the settlement, and this Court should vacate approval of the settlement.

---

[6]    Oklahoma permits "prior or subsequent" consent, Okla. Stat. Ann. tit. 21, § 839.1, but failure to opt out does not provide either.

[7]    The provisions of the settlement requiring these supposed safeguards are not only ineffective but also quite possibly meaningless, because they apply specifically to "Sponsored Stories," *see* ER 32 (ASAR § 2.1(b), (c)(iii)), which the settlement defines as "content displayed by or on behalf of Facebook that Facebook refers to or markets as 'Sponsored Stories,'" ER 30 (ASAR § 1.29). Now that Facebook is phasing out the name "Sponsored Stories" to describe its practice of deploying users' images in advertisements, *see supra* page 14, it is unclear whether these provisions referring to "Sponsored Stories" have any application.

## II.    The District Court's Reasons For Disregarding The Violations Of State Laws Were Legally Erroneous And Reflect A Misunderstanding Of The District Court's Role Under Rule 23(e).

The district court's cursory rejection of the lack-of-parental-consent objection was based on several legal errors. The district court never resolved the question, raised squarely by the Schachter objectors, whether the settlement violates seven states' parental-consent laws. Instead, the court mistook the objection based on the settlement's unlawfulness for an argument about the merits of the case; brushed aside as irrelevant the laws of Florida, New York, Oklahoma, Tennessee, Virginia and Wisconsin (in other words, every state law raised other than California's); and failed to adhere to the Supreme Court's guidance about the scope of federal preemption.

### A.  A settlement may not authorize a party to violate a state statute even if that statute is the basis for one of the causes of action being settled.

The court sidestepped the question whether the settlement violates California Civil Code § 3344 by characterizing that question as one that goes to the merits of the underlying case. ER 12. But the question whether *a settlement* authorizes conduct that violates a statute cannot be conflated with the question whether a particular defendant is liable to particular plaintiffs for violating that same statute. A court's duty to ensure that a settlement is lawful is independent from its duty to decide whether a settlement is otherwise a good compromise of the lawsuit. *See*

28

*supra* Part I. Accordingly, courts have grappled with claims that settlements and consent decrees are unlawful even where a statute the agreement is alleged to violate is also the basis for the cause of action. *See, e.g., Sierra Club*, 909 F.2d at 1355-56 (assessing whether consent decree settling Clean Water Act case violated the Clean Water Act); *Robertson*, 556 F.2d at 686 (assessing whether settlement of antitrust case violated antitrust law).

Moreover, the question whether particular plaintiffs are likely to succeed in showing that a particular defendant violated a particular law is analytically distinct from the question whether a settlement authorizes a party to violate that law in the future. Questions about the odds of a lawsuit's success depend not only on the meaning of the statutory provision at issue but also on other considerations specific to the parties. Here, for instance, the district court's reasons for finding that the class faced uncertain odds had little to do with the scope of California Civil Code § 3344, but instead concerned whether the plaintiffs could show injury or lack of consent, whether class certification would be justified, and how much time and expense would be required to prove the case. ER 4-5. The question whether the settlement authorizes Facebook to violate § 3344 in the future, by contrast, can be answered by reading only the settlement terms and the statute itself.

There is, of course, some overlap between the questions whether the settlement is lawful and whether the plaintiffs' lawsuit is likely to succeed. For

instance, the legal question whether federal law preempts § 3344 is relevant to both inquiries, because if the state statute is void, it is of no consequence whether the defendants have violated it or whether the settlement would violate it. But the existence of some overlap between legal questions about the merits of the case and about the settlement does not justify ignoring the question whether the court, in approving the settlement, would be authorizing the defendant to engage in ongoing violations of law. As the Supreme Court has repeatedly admonished, a court's responsibilities under Rule 23 cannot be avoided merely because they require some inquiry into the merits of a case. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013) ("By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry."); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (recognizing that application of the Rule 23 factors to determine whether to certify a class will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim").

If the district court were correct that it should, in assessing an objection that a class-action settlement authorizes statutory violations, ignore any statute that is also the basis for one of the class's causes of action, the success of the objection here might have differed had the objectors relied only on the other six states'

30

statutes and left California's statute out of their argument. A district court's duty in evaluating a settlement under Rule 23(e) does not depend on such technicalities. Rather, the court must ensure that the settlement does not authorize a party to violate *any* laws. *See, e.g.*, *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44; *Isby*, 75 F.3d at 1197; *Robertson*, 556 F.2d at 686; *Grunin*, 513 F.2d at 123; *cf. Sierra Club*, 909 F.2d at 1355 (court approval of consent decree depends on whether "it is fair, reasonable and equitable and does not violate the law or public policy").

In deeming the lawfulness inquiry foreclosed because one of the laws the settlement violates is also the basis for one of the plaintiffs' causes of action, the court defaulted in its duty to avoid sanctioning a settlement that authorizes violations of law.

### B. The district court erred in disregarding the laws of states other than California.

The court rejected in one sentence the Schachter objectors' reliance on the laws of states other than California: "The suggestion that the laws of other states might provide additional protection for minors fails both because objectors have neither demonstrated that the supposed differences in law are material, nor that choice-of-law principles would permit the application of such law in any event." ER 13. This cursory dismissal of the laws of six states does not withstand scrutiny.

First, in asking whether the "differences in law are material," the court misunderstood the gravamen of the objection. The Schachter objectors did not

claim that the six statutes other than California's were relevant because they are *different* than California's law, but rather because the protection they provide for minors' privacy is substantially the *same* — that is, the requirement of parental consent — and therefore is equally offended by a settlement that authorizes the commercial use of minors' likenesses without parental consent. Several of the objectors live in those additional states (Virginia for Schachter and Carome and their respective sons, New York for Becker and her daughter, and Tennessee for Parsons and her daughter), and these objectors invoke their own states' laws because this settlement is depriving them of the state-law protections they would otherwise enjoy.

Second, choice-of-law principles are irrelevant. The question is not whether California contract law or some other state's contract law governs the terms of service between Facebook and its users, or which law would have governed had the class's tort claims been litigated on the merits, or which law governs the settlement agreement. The question is whether the court should have approved a nationwide class settlement that authorizes conduct that several states' laws prohibit (three criminally). Put more concretely, regardless of which state's law governs the settlement, or would have governed the underlying substantive claims of the class had their claims been litigated further, the settlement undermines the state-law right of Tennessee parent Kim Parsons to protect her daughter's privacy

32

because the settlement authorizes what Tennessee law forbids: the use of Kim's daughter's likeness for advertising without Kim's consent. Whether Tennessee law protects against the use of a Tennessee minor's image for advertising without her parent's consent does not depend on a court's "choice of law"; absent this case and this settlement, no one would have even thought to question that Kim could sue if her daughter's likeness were used for advertising without parental consent.

Finally, respect for the state laws serves a strong federalism interest. Permitting state laws to be undermined by an agreement of private parties blessed by a single federal district judge impinges on the sovereign power of the states to enact and enforce their own laws, which otherwise may be overridden only when they are unconstitutional or when Congress manifests a clear intent to preempt them. *See, e.g., Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (explaining that "the purpose of Congress is the ultimate touchstone in every pre-emption case" and that "the historic police powers of the States [a]re not to be superseded by the Federal Act unless that [i]s the clear and manifest purpose of Congress" (citations and internal quotation marks omitted)).

## C. State laws prohibiting the use of a minor's likeness without parental consent are not preempted.

The district court's contention that the Children's Online Privacy Protection Act ("COPPA") "may well" preempt the state laws concerning parental consent and misappropriation of likeness, ER 12, is doubly problematic. First, it does not

answer the charge that the settlement authorizes the violation of law and therefore cannot be approved. The court may approve the settlement only if it concludes that the settlement does not authorize the violation of law, not merely that the settlement "may well" satisfy that criterion because the laws that the settlement authorizes Facebook to violate "may well" be preempted. As in much of its reasoning regarding minors' privacy and state law, the district court's hesitation on preemption ducks the question that the Schachter objectors asked the court to decide.

In addition to being insufficient to rebut the violation-of-state-law objection, the district court's tentative conclusion regarding preemption is wrong on the merits. COPPA restricts the collection and use of certain information pertaining to a child under age 13. *See* 15 U.S.C. §§ 6501(1) & (8); 6502(a)(1) & (b)(1). Specifically, COPPA and its implementing regulations require (among other things) that operators of websites collecting "personal information" from children provide notice on the websites regarding what information is collected from children under 13 and how that information is used, and that the operators of such websites obtain parental consent before collecting, using, or disclosing the children's "personal information." *Id.* § 6502(b)(1)(A); 16 C.F.R. § 312.3(a)-(b). "Personal information" means "individually identifiable information about an individual collected online" including, among other things, name, address, email,

34

telephone number, and "information concerning the child . . . that the website collects online from the child and combines with an identifier described in this paragraph." 15 U.S.C. § 6501(8). The Federal Trade Commission added to the list of "personal information" a "*photograph*, video, or audio file *where such file contains a child's image* or voice." 16 C.F.R. § 312.2 ("Personal information" definition, item (8)) (emphasis added); *see also* 15 U.S.C. § 6501(8)(F) (authorizing regulatory additions to the definition of "personal information"). COPPA says nothing one way or the other about the collection or use of information regarding children 13 or older. *See* 15 U.S.C. § 6501(1). COPPA preempts only state laws that "impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." *Id.* § 6502(d) (emphasis added).

Relying on this preemption clause, the district court invoked express preemption. According to the court, because COPPA regulates the collection and use of the personal information of a child "but only where the child is 'under the age of 13,'" ER 12-13 (quoting 15 U.S.C. § 6501(1)), and COPPA "expressly preempts state requirements that are 'inconsistent with' this 'treatment,'" ER 13 (quoting 15 U.S.C. § 6502(d)), COPPA "could bar any efforts by plaintiffs to use state law to impose a parental consent requirement for minors *over* the age of 13."

*Id.* (emphasis added). This logic is practically self-refuting: in the district court's view, Congress *expressly* preempted laws without saying anything about them. The express preemption clause is limited to state laws imposing liability "in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." 15 U.S.C. § 6502(d). The statute neither "describe[s]" nor "treat[s]" any activities involving children 13 or over, and therefore by its plain text cannot preempt any law applicable to actions or activities involving such children.

Even regarding minors under 13, COPPA requires parental consent for the use or disclosure of "personal information," *id.* § 6502(b)(1)(A)(ii); 16 C.F.R. § 312.3(b), which includes "information concerning the child . . . that the website collects online from the child and combines with an identifier described in this paragraph" (such as the child's name), 15 U.S.C. § 6501(8)(A), (G), and which also includes "[a] photograph . . . file where such file contains a child's image," 16 C.F.R. § 312.2 ("Personal information" definition, item (8)). Therefore, with respect to children under 13, the substantive requirements of COPPA are substantially identical to — not "inconsistent with," 15 U.S.C. § 6502(d) — the requirements that California, Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin impose on an advertisement containing a minor's name and image: both state and federal law require parental consent.

Relying principally on a one-page unpublished minute order from a California trial court, *Cohen v. Facebook, Inc.*, No. BC 444482 (L.A. Super. Ct. Sept. 22, 2011) (reproduced at ER 167), Facebook argued below that COPPA *impliedly* preempts, under a conflict preemption theory, the seven state laws on which the Schachter objectors rely. This argument flies in the face of the Supreme Court's conflict preemption jurisprudence, which holds that a decision not to regulate an area of conduct does not show congressional intent to bar states from regulating in that area. An exemplar of this principle is the Court's unanimous decision in *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002), in which the Supreme Court considered whether a state tort action based on a boat manufacturer's failure to install a propeller guard was preempted by the Federal Boat Safety Act or the Coast Guard's decision (applying regulatory authority delegated to it by Congress via the Department of Transportation) not to mandate propeller guards through regulation. *Id.* at 54-55. The court emphatically rejected the argument that a federal decision not to regulate left no room for state regulation: "It is quite wrong to view that decision [not to regulate] as the functional equivalent of a regulation prohibiting all States and their political subdivisions from adopting such a regulation." *Id.* at 65. Rather, the decision not to regulate "left the law applicable to propeller guards exactly the same as it had been" before the federal government considered the matter and decided to take no

action. *Id.*; *see also Williamson v. Mazda Motor of Am., Inc.*, 131 S. Ct. 1131, 1139-40 (2011) (holding that stricter state common-law standard for seat belts was not preempted by federal decision to impose less stringent regulation).

Although it is true that, in certain circumstances, "a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left *un*regulated" even by the states, *see Spriestma*, 537 U.S. at 66 (citation and internal quotation marks omitted), no such showing has been made here. The district court did not point to any indication that Congress, in passing COPPA to cover children under 13, intended COPPA to preclude generally-applicable state laws protecting older minors, such as longstanding state statutes protecting against use of minors' images for advertising without parental consent.

Facebook's conflict-preemption theory is dangerously broad. If Facebook were correct that COPPA's regulation of the collection of personal information from minors under 13 preempted state laws regulating the use of likenesses of minors 13 and over, then any state law regulating any data collection or use on the internet concerning anyone of any age would be in jeopardy because, under Facebook's theory, states cannot regulate any internet data collection or use that COPPA left unregulated. That is not the law.

Because the proposed settlement authorizes conduct that seven states have civilly or even criminally prohibited, and these state laws are not preempted, the district court abused its discretion in approving the settlement.

## **CONCLUSION**

The district court's approval of the settlement should be vacated.

February 13, 2014                     Respectfully submitted,

                                      /s/ Scott Michelman
                                      Scott Michelman
                                      Scott L. Nelson
                                      PUBLIC CITIZEN LITIGATION GROUP
                                      1600 20th Street NW
                                      Washington, DC  20009
                                      (202) 588-1000

                                      *Attorneys for Appellants Schachter et al.*

## STATEMENT OF RELATED CASES

The only related cases pending before this Court known to counsel are those that have been consolidated with this one, as indicated on the cover of this brief.

/s/ Scott Michelman

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of 32(a)(7)(B) because this brief contains 9,270 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman 14-point type.

/s/ Scott Michelman

## CERTIFICATE OF SERVICE

I certify that on February 13, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Scott Michelman

40