**Case No. 13-16819**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

ANGEL FRALEY, PAUL WANT, JAMES H. DUVAL, JAMES
DUVAL, W.T., RUSSELL TAIT, SUSAN MAINZER,

*Plaintiffs and Appellees,*

JO BATMAN

*Objector and Appellant*

v.

FACEBOOK, INC.,

*Defendant and Appellees*

---

Appeal from The United States District Court
For the Northern District of California, San Francisco
D.C. No. 3:11-cv-01726-RS

---

### OPENING BRIEF OF APPELLANT JO BATMAN

---

Christopher A. Bandas
Texas State Bar No. 0078763
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401
Tel: (361) 698-5200
Fax: (361) 698-5222
cbandas@bandaslawfirm.com
*Attorneys for Appellant Jo Batman*

# TABLE OF CONTENTS

Table of Contents……………………………………………………....i

Table of Authorities……………………………………………….....ii

Introduction………………..…………………………………………1

Jurisdictional Statement……………………………………………….4

Issues Presented For Review……………………………………….….5

Statement of the Case……………………………………………......6

Statement of Facts……………………………………………………7

Summary of Argument……………………………………………….10

Standard of Review……………………………………………….…11

Argument…………………………………………………………....12

I.      The District Court Abused Its Discretion By Approving A
        Common-Fund Settlement That Pays Money To Charities Via
        *Cy Pres* Before Claimant-Class Members Have Been Made
        Whole……………………………………………………..……12

II.     The District Court Abused Its Discretion By Awarding Class
        Counsel 25% Of The Net Settlement Fund As Fees………………………...16

Conclusion………………………………………………….............17

Statement of Related Cases…………………………………………...18

Certificate of Compliance....................................................................19

Certificate of Service………………………………………….............20

## TABLE OF AUTHORITIES

### CASES

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)..............................14, 17

*Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468 (5th Cir. 2011)........................15

*Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010)…………………………………......16

*Radcliffe v. Experian Information Solutions Inc.*,
    715 F.3d 1157 (9th Cir. 2013)…………………………………………...16

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009).....................…..14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)………………......11

### STATUTES, REGULATIONS AND RULES

28 U.S.C. §1291…………………………………………………………………….4

28 U.S.C. §1332(d)(2)………………………………………………………….…...4

California Civil Code §3344……………………………………………………….6

California Civil Code §17200…………………………………………...............6

## Introduction

Class counsel and class representatives brought a class action against Facebook to recover $750 statutory fines per violation in a case with over 150 million class members related to Facebook's "Sponsored Stories" program. The class action settled for $20 million structured as a common fund, which worked out to about 13 cents per class member, an amount that was probably not feasible to distribute directly to each class member and that was a far cry from the minimum $750 each class member would have recovered if successful on the statutory fine claim.

But this appeal is not about whether $20 million was an insufficient settlement. Rather, it is about whether a common fund class settlement may arbitrarily pay class members' funds to charities via a *cy pres* distribution where (1) the class members who filed claims were not made whole; and (2), not only was it feasible to pay class members directly, but the class members who timely filed claims will each actually be receiving a settlement distribution.

Because it was probably not feasible to distribute 13 cents to each class member, a compromise was worked out on the $20 million common fund settlement whereby a claims process would take place that had the potential to allow funds to be feasibly distributed directly to class members if few enough class

members elected to file claims. The proponents of the settlement apparently had hoped that the claims process would result in few enough claims that it would have been feasible to distribute some money directly to class members. But the settlement was set up so that, if distributing funds directly to class members was not feasible, settlement funds would be distributed to charities via a *cy pres* distribution. The hope was that some amount (predicted to be less than $10) might nevertheless be large enough to feasibly distribute to class members who timely filed claims. But a surprise was in store for the proponents of the settlement.

As it turned out, the claims rate was so incredibly low that millions and millions of dollars were left over even making sure each class member who filed a claim could be paid $10. Feasibility of distributing funds directly to class members who filed claims was no longer an issue, period.

Somewhere along the line it appears that the fiduciaries of the class stopped thinking of the settlement as entirely belonging to the class and started considering anything above $10 per class member as "excess funds." But $10 was merely a guess about what the proponents of the settlement thought was the most that would likely be distributed to each class member even assuming a very low claims rate. $10 had nothing to do with making a class member whole. Indeed, the class members who filed claims were ultimately given $15 each, another completely arbitrary number that while an improvement from $10 simply underscores the fact

2

that neither $10 nor $15, nor any number less than $750 could possibly make a class member whole.

Instead of paying *all* of the net settlement funds to the class members who filed claims, only an arbitrary portion of the settlement funds was actually paid to class members who filed claims (which turned out to be $15 per claimant instead of $10) and millions of dollars of the class' settlement were given to charities that were not class members via a *cy pres* distribution. The premise of this appeal is simply that *all* of the net settlement funds belonged to the class members who filed claims, not to the charities designated as *cy pres* beneficiaries.

Objector-Appellant Jo Batman wishes to acknowledge her use of and to attribute her reliance upon the opening brief filed by Appellants Wendy Lally, *et al.*, in Cause No. 13-16919, United States Court of Appeals for the Ninth Circuit.

## Jurisdictional Statement

The District Court had jurisdiction over this case. 28 U.S.C. §1332(d)(2) (Class Action Fairness Act or CAFA). Plaintiff Angel Fraley is a citizen of the State of Washington, and Defendant Facebook is incorporated in Delaware and has its corporate headquarters located within the State of California, and the total amount in controversy exceeds $5,000,000. Objector-Appellant Jo Batman timely filed her objection to the proposed settlement on or about May 2, 2014. The District Court entered its orders / judgments approving settlement and awarding attorneys' fees on August 26, 2013. Apx. 000332, 000346, 000354. Objector-Appellant Jo Batman timely filed her Notice of Appeal on September 9, 2013. Apx. 000353, 000358. This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## Issues Presented for Review

1. Did the District Court abuse its discretion by approving a common fund settlement that made a multi-million dollar *cy pres* distribution to charities instead of to the class members (1) who had timely made claims, (2) who had not yet been made whole, and (3) where feasibility was objectively not an issue because such class members would actually receive a settlement distribution, just in a lesser amount? This issue was preserved in Appellant's objection. Appellant's Objection at 2-3, Apx. 000320.

2. Did the District Court abuse its discretion under the circumstances in awarding class counsel 25% of the net settlement fund as attorneys' fees? This issue was preserved in Appellant's objection. Appellant's Objection at 2-3, Apx. 000320.

## Statement of the Case

This appeal arises from the District Court's approval of a class action settlement in a case against Facebook over its "Sponsored Stories" program for violations of California Civil Code §3344, and unfair competition under California Civil Code §17200.  The case sought civil fines of $750 per violation.  Appellant Jo Batman is an absent class member who filed a timely objection to the settlement and class counsel's request for attorneys' fees.  After the District Court approved the settlement and awarded class counsel 25% of the net settlement fund as attorneys' fees, Appellant filed this appeal.

## Statement of Facts

According to the District Court, "[t]he proposed settlement class in this action consists of some 150 million members of defendant Facebook, Inc.'s eponymous social network website, whose names and/or likenesses allegedly were misappropriated to promote products and services through Facebook's so-called 'Sponsored Stories' program." Order Granting Motion for Final Approval of Settlement Agreement at 1, Apx. 000332.

The proposed settlement created a fund of $20 million, inclusive of attorneys' fees, incentive awards, case expenses, costs of administration (and any *cy pres* distribution). Class Notice, Apx. 000064. Class members were permitted to file claims against this fund and, if few enough claims were submitted, each claimant was expected to receive a check for up to $10. *Id.* The District Court (and apparently the proponents of the settlement) expected that only a "relatively low percentage of class members [would file] claims[.]" Order Granting Motion for Final Approval of Settlement Agreement at 1, Apx. 000332. However, the *actual* claims rate was far more modest than even the very modest projected claims rate that the Court and the proponents of the settlement were expecting. *Id.* at 5-6, Apx. 000332. As it turned out, there were millions and millions of dollars left over after money was set aside to pay $10 to each of the class members who timely filed claims. *Id.* at 9-10, Apx. 000332.

Despite the possibility of paying each claimant an even higher amount, several million dollars were paid to *cy pres* charities with the apparent blessing of class counsel.  The District Court explained:

> Indeed, so few persons have filed claims that the parties now propose paying $15 per claimant, which will still leave sufficient funds remaining for attorney fees, costs, expenses, and a distribution to the *cy pres* recipients. As a means of providing recompense to any genuinely injured parties, this approach certainly would not be ideal. The relatively low amount offered undoubtedly discouraged class members from filing claims. In a sense, adding a direct payment component to the settlement, did very little to buttress its overall fairness.

Order Granting Motion for Final Approval of Settlement Agreement at 5-6, Apx. 000332.  The District Court approved a payment to the *cy pres* fund despite the fact that the claimant-class members had not been made whole.  As the Court explained,

> The implications of raising the payout to $15 per claim have been carefully considered, as has the potential of raising it even further. Although the notice to class members sufficiently preserved the possibility that payments would exceed $10, the payments cannot be raised to a level that would be unfair to those class members who declined to submit claims for what they believed almost certainly would be $10 or less. The increase to $15 represents an appropriate balance between the interest in distributing as much of the cash directly to class members as possible and the need to avoid creating such unfairness.

Order Granting Motion for Final Approval of Settlement Agreement at 6, fn. 3,

Apx. 000332.

The District Court also awarded class counsel attorneys' fees as follows: "Plaintiffs may recover attorney fees of 25% of the balance of the settlement funds remaining after deduction of (1) settlement administration expenses, (2) the costs awarded herein, (3) the incentive awards made herein." Order Granting Attorney Fees at 7, Apx. 000346.

## Summary of Argument

The $20 million settlement recovered here belongs to the class, and the entire settlement net of fees and other cost deductions must be paid to the class members who have come forward and made claims. Payments to charities via *cy pres* are permitted only where it is unfeasible to send payments to individual class members or when each class member has been made whole.

Feasibility is not an issue. Moreover, the class members have not remotely been made whole. Because neither of these conditions is met here, the entire $20 million fund, less attorneys' fees and other cost deductions, should be distributed to those class members who filed claims. Moreover, class counsel should receive no more than their reasonable lodestar, or $4.5 million. Alternatively, class counsel should not receive any fee in this case due to the fact that they allowed class funds to be distributed to charities under the circumstances of this case.

**Standard of Review**

A District Court's approval of a class action settlement and award of attorneys' fees in a class action is reviewed for abuse of discretion. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002).

**Argument**

I.  **The District Court Abused Its Discretion By Approving A Common-Fund Settlement That Pays Money To Charities Via *Cy Pres* Before Claimant-Class Members Have Been Made Whole.**

After making deductions for attorneys' fees, litigation expenses and other costs, and given the approximately 800,000 class members who filed claims, approximately $19 could have been paid to each claimant-class member. However, that was not done. Instead, only $15 was paid to each claimant-class member and the remainder was paid to charities via *cy pres*. The District Court provided to following rationale:

> Indeed, so few persons have filed claims that the parties now propose paying $15 per claimant, which will still leave sufficient funds remaining for attorney fees, costs, expenses, and a distribution to the *cy pres* recipients. As a means of providing recompense to any genuinely injured parties, this approach certainly would not be ideal. The relatively low amount offered undoubtedly discouraged class members from filing claims. In a sense, adding a direct payment component to the settlement, did very little to buttress its overall fairness.

Order Granting Motion for Final Approval of Settlement Agreement at 5-6, Apx. 000332. The District Court approved a payment to *cy pres* despite the fact that claiming class members had not been made whole. As the Court explained,

> The implications of raising the payout to $15 per claim have been carefully considered, as has the potential of raising it even further. Although the notice to class members sufficiently preserved the possibility that payments would exceed $10, the payments cannot be

12

> raised to a level that would be unfair to those class
> members who declined to submit claims for what they
> believed almost certainly would be $10 or less. The
> increase to $15 represents an appropriate balance
> between the interest in distributing as much of the cash
> directly to class members as possible and the need to
> avoid creating such unfairness.

Order Granting Motion for Final Approval of Settlement Agreement at 6, fn. 3,

Apx. 000332.

The District Court therefore clearly perceived that the settlement was unfair

to class members who did not file claims and it attempted to balance that

unfairness. However, the remedy was not doing something to provide value to the

unnamed class members who received nothing but instead consisted of taking

money away from the class members who did file claims and giving it away to

non-class member charities. This situation brings to mind the Handicapper

General in Kurt Vonnegut's short story *Harrison Bergeron,* who was charged with

the goal of bringing about social equality not by raising the lowest members of

society but by handicapping the exceptional members. This settlement may indeed

be unfair to the class members who did not file claims. But the fact that this

settlement may have been unfair to class members who did not file claims does

justify taking settlement money away from claimant-class members and giving it to

non-class member charities. *All* of the settlement funds belong to the claimant-

class members.

13

*Cy pres* is always a second choice to paying money to the class directly. As explained in this Court's opinion in *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012),

> *Cy pres* is shorthand for the old equitable doctrine "*cy près comme possible*" — French for "as near as possible." Although the doctrine originated in the area of wills as a way to effectuate the testator's intent in making charitable gifts, federal courts now frequently apply it in the settlement of class actions "where the proof of individual claims would be burdensome or distribution of damages costly." Used in lieu of direct distribution of damages to silent class members, this alternative allows for "aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class."

*Id.* at 865 (citations omitted).

*Cy pres* distributions are always disfavored in comparison to settlements that distribute benefits directly to members of the settlement class. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

It is axiomatic that any money recovered on behalf of the class in this action belongs to the class members. The entire fund must be paid to those class members who come forward and make claims until and unless those class members are made whole. That did not happen here. Despite the fact that those class members who filed claims will receive only $15, far less than their claimed statutory damages of $750, the court approved payment to *cy pres* recipients to remedy a perceived unfairness to the class members who did not file claims.

14

In *Klier v. Elf Atochem N.A., Inc.*, 658 F.3d 468 (5th Cir. 2011), the Fifth Circuit clarified that ***no settlement money may be paid to cy pres*** until every class member who has filed a claim as received 100% of the alleged damages.

> The settlement fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members... Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members." Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution. A *cy pres* distribution puts settlement funds to the next-best use by providing an indirect benefit to the class. That option arises only if it is not possible to put those funds to their very best use: benefiting the class members directly.

*Id.* at 475.

Until each claimant-class member has received at least $750 per violation, no amount from the net settlement fund may be paid to charity via *cy pres*. Further distribution of the settlement fund to class members who filed claims is patently feasible. Instead of paying $15 to the 800,000 or so class members who filed claims in this settlement, each claimant would receive $19, which would fully exhaust the settlement fund net of fees, expenses and costs. The District Court abused its discretion in approving the settlement under these circumstances.

15

**II.    The District Court Abused Its Discretion By Awarding Class Counsel 25% Of The Net Settlement Fund As Fees.**

In awarding attorneys' fees to class counsel, the District Court found that class counsel's lodestar was overstated, and that a reasonable lodestar would be around $4.5 million. Despite this finding, the District Court found that a multiplier of 1.11 would be warranted, and awarded a $5 million fee.

While the difference between class counsel's lodestar and the fee awarded is small relative to the lodestar, class counsel should not receive even a $500,000 bonus for this nuisance value settlement of 13 cents per class member. Moreover, no multiplier is justified for the further reason that class counsel did not provide adequate representation to the class they represented by allowing millions of settlement dollars recovered for the class to be distributed to charity that belonged to the claimant-class members.

In *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010), the Supreme Court held that multipliers are disallowed in all but the most "rare" and "exceptional" cases. They certainly should not be allowed in this case.

Alternatively, class counsel is not entitled to a fee where it was an inadequate representative of the class by violating its duty of loyalty to the class. As this Court observed in *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013), "[c]lass counsel has a fiduciary duty to the class as a whole[.]" *See also id.* at 1168 ("we reverse the awards because the district court

16

abused its discretion by not considering 'whether class counsel has properly discharged its duty of loyalty to absent class members' in its award of attorneys' fees and costs'"). It has also been observed that defendants like Facebook are indifferent as to the allocation of funds between the class, the named representatives, and class counsel. *See, eg., Dennis*, 697 F.3d at 864. Class counsel clearly could have asserted the rights of the unnamed class members they represented more vigorously against the interests of the charities they did not represent to ensure that all net settlement funds went to the claimant-class members. No evidence could be located in the record that class counsel vigorously fought to prevent the class' funds to be paid to charity via *cy pres*. Here, class counsel violated their duty of loyalty to the unnamed class members they represented by allowing the distribution millions of dollars recovered for the class to go to non-class member charities over actual claimant-class members who had not been made remotely whole. Attorneys' fees awarded were excessive under any analysis.

17

## CONCLUSION

For the foregoing reasons, this Court should (1) reverse the District Court's approval of the settlement; or (2) reverse the District Court's approval of the *cy pres* component of the settlement and order that the entire net settlement fund be paid to claimants; and (3) reverse the District Court's award of attorneys' fees and remand with instructions to award no more than the reasonable lodestar or, alternatively, to reverse and render the attorneys' fee award on the ground that class counsel is not entitled to any fee.

Dated March 14, 2014

/s/ *Christopher A. Bandas*
Christopher A. Bandas
Texas State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401
Tel: (361) 698-5200
Fax: (361) 698-5222
*Attorneys for Appellant Jo Batman*

18

## STATEMENT OF RELATED CASES
## PURSUANT TO NINTH CIRCUIT RULE 28-2.6

The following appeals are consolidated with this appeal:  Nos.13-16918, 13-16919, 13-16936, 13-17028.

Dated: March 14, 2014                   Respectfully submitted,


By:        _____*/s/ Christopher A. Bandas*_____
           Christopher A. Bandas
           Texas State Bar No. 00787637
           BANDAS LAW FIRM, P.C.
           500 North Shoreline Blvd., Suite 1020
           Corpus Christi, Texas 78401
           Tel: (361) 698-5200
           Fax: (361) 698-5222
           *Attorneys for Appellant Jo Batman*

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. 32(a)(7)(c) AND CIRCUIT RULE 32-1

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief is 3,904 words long, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: March 14, 2014                    Respectfully submitted,


By:    _____*/s/ Christopher A. Bandas*_____
Christopher A. Bandas
Texas State Bar No. 00787637
BANDAS LAW FIRM, P.C.
500 North Shoreline Blvd., Suite 1020
Corpus Christi, Texas 78401
Tel: (361) 698-5200
Fax: (361) 698-5222
*Attorneys for Appellamt Jo Batman*

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, thereby effecting service on counsel.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed on March 14, 2014

/s/ *Christopher A. Bandas*
Christopher A. Bandas