Consol. Nos. 13-16819, 13-16918, 13-16919,
13-16929, 13-16936, 13-17028, 13-17097

# In The United States Court Of Appeals For The Ninth Circuit

ANGEL FRALEY, et al.,
Plaintiffs – Appellees

v.

H.L.S., through her mother, Shelia L. Shane,
Objector-Appellant

v.

FACEBOOK, INC.,
Defendant – Appellee.

On Appeal from the Northern District of California
Case No. 3:11-cv-01726-RS
The Honorable Richard Seeborg, District Judge

## BRIEF OF APPELLANT H.L.S.

Aaron M. Zigler
**KOREIN TILLERY LLC**
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
*Attorneys for Objector-Appellant H.L.S.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................III

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW................3

STATEMENT OF THE CASE ..............................................................3

I.   Background of the Litigation...........................................................3

II.   The District Court Rejected the Original Proposed Settlement......5

III.   The District Court Approved the Revised Proposed Settlement.....7

REQUEST FOR ORAL ARGUMENT ....................................................9

SUMMARY OF ARGUMENT ..............................................................10

STANDARD OF REVIEW ...................................................................11

OBJECTION RAISED BELOW ...........................................................12

ARGUMENT........................................................................................12

I.   Rule 23 and Due Process Require Separate Legal Representation of
Class Members With Conflicting Interests in the Class Settlement
Context .........................................................................................14

II.   Because the Minor Subclass Lacked Unconflicted Representation,
Approval of the Proposed Settlement Was An Abuse of Discretion ......26

A. The Claims of the Minor Subclass Are Different—And Stronger—
Than the Claims of Adult Class Members Like Plaintiffs..................28

CONCLUSION ................................................................................ 34

STATEMENT OF RELATED CASES .................................................. 35

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7) ........ 36

PROOF OF SERVICE .................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Ahearn v. Fibreboard Corp.*,
    162 F.R.D. 505 (E.D. Tex. 1995) ........................................................ 19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................... 12, 13, 15, 16, 17, 19, 23, 26

*In re Asbestos Litig.*,
    134 F.3d 668 (5th Cir. 1998) ................................................. 17, 18, 19

*In re Asbestos Litig.*,
    90 F.3d 963 (5th Cir. 1996) ......................................................... 18, 19

*Bellotti v. Baird*,
    443 U.S. 622 (1979) ....................................................................... 30

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ................................................ 20, 21, 22

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ...................................................... 11, 27

*Downey Venture v. LMI Ins. Co.*,
    66 Cal. App. 4th 478 (1998) ............................................................ 32

*Duffens v. Valenti*,
    161 Cal. App. 4th 434 (2008) .......................................................... 32

*ETW Corp. v. Jireh Publ'g*,
    332 F.3d 915 (6th Cir. 2003) ........................................................... 31

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ......................................................... 14

*I.B. ex rel. Fife v. Facebook, Inc.*,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) .............................................. 32

iii

*Georgine v. Amchem Prods., Inc.*,
  157 F.R.D. 246 (E.D. Pa. 1994).......................................................... 15

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996) ......................................................... 15, 16

*Hakes Inv. Co. v. Lyons*,
  137 P. 911 (Cal. 1913) ..................................................................... 31

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................... 13, 15

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ......................14, 22, 23, 24, 25, 26, 27, 28

*Lugosi v. Universal Pictures*,
  25 Cal. 3d 813 (1979) ....................................................................... 31

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ............................................................ 11

*Morgan v. Morgan*,
  220 Cal. App. 2d 665 (1963) ............................................................ 31

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ............................................................ 12

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999).................................13, 17, 18, 19, 20, 23, 26, 33

*People v. Howard*,
  31 Cal. App. 358 (1916)................................................................... 31

*Radcliffe v. Experian Info. Solutions Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .......................................................... 11

*Rodriguez v. W. Publ'g*,
  563 F.3d 948 (9th Cir. 2009) ............................................................ 13

*Roper v. Simmons*,
  543 U.S. 551 (2005) ......................................................................... 30

*Sisco v. Cosgrove*,
    51 Cal. App. 4th 1302 (1996) ............................................................ 31

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................ 12

*Thompson v. Oklahoma*,
    487 U.S. 815 (1988) ............................................................ 30

**Statutes**

Cal. Civil Code § 3344 ............................................................ 10, 29

Cal. Fam. Code § 6701 ............................................................ 29, 30, 31

Cal. Fam. Code § 6710 ............................................................ 32

**Other Authorities**

Fed. R. Civ. P. 23 ............................................ 11, 12, 13, 14, 15, 19, 22, 27

Restatement (Second) of Contracts §§ 7, 8 (1981) ................................ 32

## JURISDICTIONAL STATEMENT

### 1.    The District Court's Jurisdiction

The Northern District of California had jurisdiction over the subject matter of this action under 28 U.S.C § 1332(d) because there is minimal diversity of citizenship among the parties, there are more than one hundred members of the proposed class/subclasses, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. H.L.S. is a citizen of Illinois. (ECF No. 314-1 at ¶ 5). Facebook is a Delaware corporation with its principle place of business in California. (ECF No. 1 at ¶ 8).

### 2.    Appellate Jurisdiction

This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the district court rendered a final decision disposing of all claims before it when it granted final approval of the settlement on August 26, 2013. (ECF No. 359, EOR 14).[1] The order granting final approval is a final decision within the meaning of 28 U.S.C. § 1291. The Clerk entered Judgment in accordance with that order on September 19, 2013. (ECF No. 368, EOR 3).

_____

[1] References to "EOR. __" are to H.L.S.'s Excerpts of the Record.

1

Appellant filed a timely notice of appeal on September 24, 2013, (ECF No. 376, EOR 1), less than 30 days following the entry of the order granting final approval of the settlement and the entry of the Judgment.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Did the District Court abuse its discretion by approving a settlement involving a subclass of minor children, whose interests conflicted with those of the rest of the Class and were not represented by separate counsel?

## STATEMENT OF THE CASE

### I.     Background of the Litigation

Facebook uses the names and pictures of its users to advertise everything from Wal-Mart stores and Buffalo Wild Wings restaurants to Internet games and Facebook membership itself. Facebook contends that its users agreed to Facebook's use of their identities because the non-negotiable terms of Facebook's Statement of Rights and Responsibilities ("SRR") provide:

> your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.

(SRR at ¶ 10, EOR 179). Many Facebook users objected to this practice and filed several cases against Facebook challenging its commercial use of the names and likenesses of users in advertisements. The first such case, *Cohen v. Facebook* (Los Angeles Superior Court Case No. BC

3

444482), was filed in August 2010. (ECF 203-2, EOR at 213).

Several lawsuits were filed on behalf of minors alleging that minor users of Facebook (like Appellant H.L.S.) were incapable of consenting to Facebook's use of their names or likenesses as a matter of law. (*See, e.g.*, *E.K.D. v. Facebook, Inc.*, EOR 163,[2] s*ee also*, Trans. of Hearing on Motion to Dismiss, EOR 287 at 6:2-12:23).

The present case, the fifth lawsuit filed against Facebook for its misappropriation of names and likenesses in various advertisements, was filed after Plaintiff Fraley's counsel had been "watching [another] case against Facebook from the sidelines." (ECF No. 203 at ¶6, EOR 207; ECF No. 203-1, EOR 212). The *Fraley* complaint, however, was not limited to a class of minors. (ECF No. 22 at ¶2, EOR 114). Instead, *Fraley* was brought on behalf of both adults and minors and limited in a different respect. Unlike other cases, *Fraley* only challenged one specific kind of Facebook advertisement known as "Sponsored Stories." (*Id.* at ¶3). As the district court explained:

> Plaintiffs here contend that they never consented in any
> form to the use of their names or likenesses in Sponsored

---

[2] *E.K.D.* was later transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a) and amended to be captioned *C.M.D. v. Facebook, Inc.*, No. 12-cv-01216.

4

Stories, noting that Sponsored Stories were not even a feature of Facebook at the time they became registered members, and alleging that Plaintiffs were never asked to review or renew their Terms of Use subsequent to Facebook's introduction of the Sponsored Stories feature, which operates on an opt-out basis. The gravamen of Plaintiffs' consent argument is that even if the Statement of Rights and Responsibilities can be broadly construed to encompass Sponsored Stories, such "consent" was fraudulently obtained and thus not knowing and willful.

(Order on Motion to Dismiss, ECF No. 74 at 23-24, EOR 60-61).

In March 2012, the *Fraley* Plaintiffs filed their motion for class certification, which Facebook opposed. (ECF Nos. 106, 141). Three days before the class certification hearing, however, the parties advised the district court that they had tentatively reached a settlement agreement in principle. (ECF No. 163).

## II.    The District Court Rejected the Original Proposed Settlement

Facebook and the *Fraley* plaintiffs filed a redacted Motion for Preliminary Approval of Class Action Settlement in June 2012, disclosing the substantive terms of the proposed settlement: $10 million in *cy pres,* $10 million in attorneys' fees. (ECF No. 181).

Because the proposed settlement offered no real relief to the proposed settlement class, and failed to adequately protect the interests of minor class members, the *C.M.D.* plaintiffs filed a motion to

5

intervene and urged the district court not to grant preliminary approval to the proposed settlement. (ECF No. 187 at 5, EOR 182). As they pointed out, the proposed settlement offered no benefit to the minor class, while providing more than ten times more in attorneys' fees than this Court rejected in the proposed class settlement in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The proposed settlement also included a "clear sailing agreement", pursuant to which Facebook agreed not to object to an award of attorneys' fees equal to the monetary *cy pres* relief afforded the class, and that any portion of the $10 million attorneys' fees not awarded would revert to Facebook (rather than adding it to the *cy pres* fund or otherwise benefitting the class). (ECF No. 187 at 8-9, EOR 182).

In addition, the proposed settlement broadly sought to release all claims (known or unknown) that class members (including the *C.M.D.* plaintiffs) might have against Facebook relating to any conduct, despite the fact that the *Fraley* plaintiffs' claims were limited to Facebook's "Sponsored Stories" practices. (*Id.* at 13-14). Similarly, the settlement sought to release all claims of Facebook users at any point in time, even though *Fraley* was only brought on behalf of members who joined prior

6

to January 24, 2011. (*Id*). The original proposed settlement also broadly re-defined "Sponsored Stories" to include other kinds of Facebook advertisements that were not challenged in *Fraley* but were challenged in other pending cases. (*Id.* at 14). The proposed "injunctive relief" merely would have required minors to represent that their parents consented to Facebook's terms. (*Id*).

The district court denied the motion to intervene as moot and denied the motion for preliminary approval of settlement without prejudice. (ECF No. 215, EOR 36; ECF No. 224). The court noted "sufficient questions" made preliminary approval improper. (ECF No. 224). Specifically, the court noted the lack of any direct payment to class members (whose statutory damages could have been $750 per person), the limited *cy pres* award, and the disproportionately high attorneys' fee award compared to the limited *cy pres* award. (*Id*).

## III.  The District Court Approved the Revised Proposed Settlement

After the district court rejected the original settlement proposal, the *Fraley* plaintiffs and Facebook revised their proposed settlement to create a $20 million fund, out of which class member claims *might* be paid and attorneys' fees would be paid, in lieu of the previously

proposed $10 million *cy pres*–$10 million attorneys' fees fund. (ECF No.

235-1, EOR 242). Under the terms of the revised settlement, class

members could make a claim of up to $10 (a maximum recovery of less

than two percent of the $750 statutory damages provided for even a

single use of an individual's name or likeness) *provided*, however, that

less than two percent of the 123 million member class made claims.

(*Id.*). If 2% or more of the class made claims, then the settlement would

have reverted to the same kind of *cy pres*–attorneys' fee settlement the

district court had already rejected. (ECF 314 at 7-8, EOR 265).

Moreover, despite class counsel's recognition of the qualitative

differences between the claims of adult and minor class members—as

evidenced by the inclusion of a proposed minor subclass in the second

amended *Fraley* complaint—the proposed settlement treats the minor

subclass exactly the same as adult members of the proposed class. (ECF

No. 235-1, EOR 245). Nevertheless, the minor subclass did not have

separate, independent legal representation during the settlement

negotiations or at the fairness hearing. (*Id.*). Class counsel represented

both the adult class and minor subclass. (*Id.* at EOR 239).

Appellant H.L.S., along with a number of other objectors, opposed

the settling parties' motion for approval of the proposed settlement. (ECF No. 314, EOR 265). The district court overruled all objections and granted final approval of the settlement on August 26, 2013. (ECF No. 359, EOR 14). Although finding that "the monetary relief to each class members is relatively small the Court approved the settlement due to the "low probability that a substantially better result would be obtained through continued litigation." (*Id.* at 2). The court also noted that so few class members had made claims that the settling parties had proposed paying $15 per claimant, even though the extremely low claims rate was a result of the negligible settlement benefit offered (discouraging class members from filing claims). (*Id.* at 6). The Court thus found the proposed settlement to be fair and reasonable, given the small indication that class members suffered any pecuniary harm as a result of Sponsored Stories. (*Id.*).

## REQUEST FOR ORAL ARGUMENT

Objector-Appellee requests that this case be added to the argument calendar. This case meets the standards in Rule 34(a)(2) for oral argument, in that (a) this appeal is not frivolous, (b) the dispositive issues raised in this appeal have not been recently and authoritatively

decided in this circuit, and (c) the decisional process would be significantly aided by oral argument.

## SUMMARY OF ARGUMENT

District courts are required to carefully scrutinize proposed class action settlements that create material conflicts of interest between the named plaintiffs (and their counsel) and other class members. Such heightened scrutiny is central to determining the adequacy of named plaintiffs and class counsel and critical to the protection of the due process rights of absent class members. The district court in this case approved a proposed class settlement that gives rise to material conflicts between adult class members (like Plaintiffs) and the minor subclass. Minor class members' claims are different—and stronger— than the claims of adult class members because California law precludes minors from consenting to the commercial use of their name and likeness. *See* Cal. Civil Code § 3344. The proposed settlement compromises minors' claims for the same consideration as adult claims, even though the minor subclass lacked independent, unconflicted counsel to advocate its distinct interests. Under such circumstances, the

10

district court's approval of the settlement was an abuse of discretion and, this Court should therefore reverse.

## STANDARD OF REVIEW

This Court generally reviews a district court's approval of a class action settlement for an abuse of discretion. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1162-63 (9th Cir. 2013). A district court's finding of Rule 23 adequacy of representation is also reviewed under the abuse of discretion standard. *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003). A court abuses its discretion when it fails to apply the correct standard or bases its decision on unreasonable findings of fact. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012).

When a class action settlement is proposed before class certification, however, a higher standard of fairness and a more probing inquiry is required. *Id.* at 864 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). To survive appellate review, an order approving a class settlement must demonstrate that the district court explored all factors comprehensively and gave a reasoned response to all non-frivolous objections. *Id.* at 864 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)).

## OBJECTION RAISED BELOW

Appellants timely objected to the settlement on May 2, 2013. (ECF No. 314, EOR 265). After final approval was granted on August 26, 2013, Appellants filed a timely notice of appeal on September 24, 2013. (ECF No. 376, EOR 1).

## ARGUMENT

Rule 23 establishes a procedural framework designed to protect the interests and due process rights of absent class members. *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 623 (9th Cir. 1982) (citations omitted). When a class action settlement is proposed, particularly at an incipient stage of litigation prior to class certification, it is not enough that the proposed settlement may be "fair". *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997). With one exception, a proposed settlement class must still satisfy all of the requirements of Rules 23(a) and (b)(3). *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). When presented with a settlement-only class certification, a court is not required to consider Rule 23(b)(3)'s trial manageability requirement (because there will be no trial if the settlement is approved), but it is of "vital importance" that the other

12

requirements of Rule 23 receive "undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

Examination of potential conflicts of interest has long been an important prerequisite to class certification. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent class members. *Rodriguez v. W. Publ'g*, 563 F.3d 948 (9th Cir. 2009) (citing *Hanlon*). Accordingly, even a settlement that offers compensation within the reasonable range of fairness cannot be approved if it suffers from fundamental conflicts of interest. *See, e.g.*, *Amchem*, 521 U.S. 591; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

The proposed settlement in this case creates just such a conflict: it releases different claims of different strength of two mutually exclusive groups of class members, and it does so without separate representation to advocate for these two distinct subsets of the class. This is a conflict that falls squarely within those requiring the structural protections demanded by *Amchem*. *Ortiz*, 527 U.S. at 857. "Only the creation of subclasses, and the advocacy of an attorney representing each subclass,

13

can ensure that the interests of that particular subgroup are in fact, adequately represented." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011). In the present case, representation of the minor subclass was inadequate without separate counsel and the district court abused its discretion by approving the proposed settlement.

## I.    Rule 23 and Due Process Require Separate Legal Representation of Class Members With Conflicting Interests in the Class Settlement Context

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A district court's finding of adequate representation requires that: (1) the named plaintiffs and their counsel do not have any conflicts of interest with other class members and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

An extensive body of case law makes clear what the necessary structural protections are to guard against conflicts of interest and ensure fair and adequate representation in the class settlement context:

subclassing for class members with conflicting claims and separate, unconflicted counsel. The Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), is the seminal decision on this issue. Just like this case, "at its heart" *Amchem* concerned settlement allocation decisions made by class counsel seeking to represent diverse groups of plaintiffs. *Hanlon*, 150 F. 3d at 1020.

In *Amchem*, the Supreme Court rejected a class-wide settlement of asbestosis claims that failed to provide structural assurances of adequate representation – namely, certification of separate subclasses with separate representation to eliminate conflicting interests of claimants and counsel. 521 U.S. at 627. The district court certified the class and approved the settlement as fair, reasonable and adequate. *Georgine v. Amchem Prods., Inc.*, 157 F.R.D. 246 (E.D. Pa. 1994).

The Third Circuit reversed, finding that the settlement failed Rule 23(a)(4)'s adequacy requirement because of conflicts amongst the class members. *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996). The court agreed that "the members of the class are united in seeking the maximum possible recovery for their asbestos-related claims," but a class settlement "does more than simply provide a

15

general recovery fund." *Id.* Instead, "it makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others." *Id.* Under the *Amchem* settlement, claimants with asymptomatic pleural thickening would have received no monetary award. *Id.* Other claims received generous compensation. *Id.* at 620.

The settlement also created a conflict between the sick and those who would be sick in the future. *Id* at 630. The sick wanted to maximize their recovery while the future claimants would want to minimize those payments to make sure that funds would still be available in the future. *Id.* at 630-31. Even though each group was represented by a class representatives, the appellate court held "[t]his conflict (as well as other conflicts among different types of claimants) precludes a finding of adequacy of representation." *Id.* at 631.

The Supreme Court agreed. "[T]he interests of those within the single class" were "not aligned." *Amchem*, 521 U.S. at 626. The currently sick were interested in "generous immediate payments," whereas holders of future claims sought to ensure "an ample, inflation-protected fund for the future." *Id.* The fact that the settlement fund was

16

large enough to pay all claims did not ameliorate this concern. *Id.*

The terms of the settlement reflected "essential allocation decisions designed to confine compensation and to limit defendants' liability." *Id.* at 627. Accordingly, the Third Circuit's finding that there was no assurance, "either in the terms of the settlement or in the structure of the negotiations" that the named plaintiffs properly negotiated for their own unique interests was "on the mark." *Id.* at 628.

As one judge wrote in its wake, *Amchem* firmly established adequacy of representation must be analyzed as a procedural safeguard – a structural assurance that the class members' interests are protected, irrespective of the fairness of the outcome. *In re Asbestos Litig.*, 134 F.3d 668, 675 (5th Cir. 1998) (Smith, J., dissenting). Since that time numerous settlements have been struck down for failing to provide these protections to absent class members regardless of the fairness of the settlement.

Just two years after *Amchem* was decided, the Supreme Court again rejected a proposed settlement that sought to release claims that were divided along two fault lines. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). As in *Amchem*, *Ortiz* involved "holders of present and future

claims," and also holders of "more valuable" and less valuable claims. *Id.* at 856–57.

Also like *Amchem*, *Ortiz* involved a proposed class-wide settlement of asbestosis claims. Prior to the settlement, claims based on asbestos exposure that occurred when Fibreboard was insured had a "much higher" settlement value than those for exposure after its insurance had expired. *Id.* at 823 n.2. However, under the proposed class settlement, all claims were to be paid from the same fund, subject to the same maximum payment. *Id.* at 827.[3]

Without questioning the skill, competence or experience of class counsel, the objectors in *Ortiz* argued that impermissible conflicts of interest prevented class counsel from adequately representing the class. *In re Asbestos Litig.*, 90 F.3d 963, 977 (5th Cir. 1996). The objectors contended that the claims of the sick conflicted with those who had yet to manifest symptoms and the claims of those exposed when Fibreboard was insured conflicted with those who were exposed after its insurance expired. *Id.* at 980-81. Nevertheless, the district court approved the

---

[3] Before the settlement became imminent, the insured claims settled for an average of $12,000, while the uninsured settled for only $4,000. *In re Asbestos Litig.*, 134 F.3d 668, 678 n.24 (5th Cir. 1998) (Smith, J., dissenting)

18

settlement. *See Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505 (E.D. Tex. 1995).

On appeal, the Fifth Circuit affirmed, rejecting the objectors' arguments. The court noted that all negotiations were vigorous and at arm's length, often conducted under the auspices of a mediator, the settlement treated all class members the same and was fair and reasonable, a finding that the objectors have not appealed. *In re Asbestos Litig.*, 90 F.3d at 982.[4]

The Supreme Court reversed. The Court began by remarking that "it is obvious after *Amchem* that a class divided between holders of present and future claims" "requires division into ... subclasses ... with separate representation." *Ortiz*, 527 U.S. at 856. Because the settlement included more valuable and less valuable claims, it created a conflict among class members, requiring the creation of subclasses represented by separate counsel. *Id.* at 857.

---

[4] The Supreme Court granted certiorari, vacated the opinion and remanded for further consideration of *Amchem*. *Ortiz v. Fibreboard Corp.*, 521 U.S. 1114 (1997). On reconsideration, the appellate court "found nothing in the *Amchem* opinion that changes [its] prior decision" distinguishing *Amchem* as a Rule 23(b)(3) case and remarking that the settlement before it treated all members of the class alike. *In re Asbestos Litig.*, 134 F.3d 668, 669-70 (5th Cir. 1998).

The Fifth Circuit's logic that the conflicts could be ignored because all class members were treated alike was "no answer." *Id.* Instead, the settlement's failure to differentiate between claims of differing strength only confirmed the existence of a conflict:

> The settlement decides that the claims of the immediately injured deserve no provisions more favorable than the more speculative claims of those projected to have future injuries, and that liability subject to indemnification is no different than liability with no indemnification. The very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that those with ... [stronger claims] would have chosen.

*Id.* The Court thus held that the proposed settlement had to be rejected. *Id.* at 865.

Similarly, in *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007), the Second Circuit rejected a proposed class settlement that failed to provide the structural protections of separate representation. The case involved breach of fiduciary claims brought by health and welfare plans against their pharmacy benefit manager for allegedly favoring its parent company's drugs over less expensive alternatives, thereby increasing the cost of health care. *Id.* at 234-35. The settlement class included both plans that paid set amounts for Medco services (insured

plans) and self-funded plans whose cost varied based upon its members' health expenses. *Id.*

Several self-funded plans objected to the class-wide settlement. They argued that the insured plans did not assume any risk of additional health costs so were not damaged and should not receive any part of the settlement fund. *Id.* at 246. But under the terms of the settlement, those insured plans were entitled to a substantial share of the fund. *Id.* The self-funded plans believed that this conflict required independent counsel. *Id.* at 245. The district court rejected this argument, observing that the settlement properly accounted for this disparity by applying a 55% discount to the claims of the insured plans, a figure determined by counsel with the assistance of expert opinion and a special master. *Id.* at 237, 245.

On appeal, the Second Circuit agreed with the self-funded plans. Without deciding "whether the self-funded Plans in fact suffered greater injury," the court found the conflict required the claims be raised as part of a separate subclass. *Id.* at 246. This conflict among the plans was not "a simple disagreement over potential differences in the computation of damages." *Id.* Instead, the conflict went to the very

21

heart of the litigation – the plans' relationship to Medco and the effect of that relationship on each plan. *Id.* "Because the antagonistic interests apparent in the class should be adequately and independently represented," the case was remanded to the district court "for certification of a subclass encompassing the self-funded plans in order to better protect their claims in this litigation." *Id.*

More recently, the Second Circuit rejected a settlement for this same failing in *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011). The court held that Rule 23(a)(4)'s adequacy requirement was not satisfied, even though "[t]he Settlement was the product of an intense, protracted, adversarial mediation," the "mediators were highly respected and capable," and "associational plaintiffs advanced the interests of all [class members]." *Id.* at 252. Notwithstanding those salutary features of the settlement process, the court held that "[o]nly the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented." *Id.*

*Literary Works* involved the claims of freelance authors against publishers for violating the authors' copyrights. *Id.* at 245. The district

court referred the matter to mediation before Kenneth Feinberg and

Peter Woodin and a comprehensive settlement agreement was reached.

*Id.* The proposed settlement divided the claims at issue into three

categories: those eligible for statutory damages, actual damages and no

damages. *Id.* at 246. Authors were allocated payments on a sliding scale

with Category A claims worth more than Category B claims and

Category C claims worth the least. *Id.* The settlement also capped the

publishers' total liability by providing that if claims, costs and fees

exceed $18 million, then Category C claims were reduced *pro rata* until

the total compensation equaled $18 million. *Id.* Objectors argued that

this structure of different classes of claims competing for the same fund

created an impermissible conflict of interest with the named plaintiffs

favoring the Category A and B claims. *Id.* at 250.

The Second Circuit agreed, finding that the settlement structure

contained all the ingredients of conflict identified in *Amchem* and *Ortiz*.

*Id.* It " 'confine[s] compensation and ... limit[s] defendants' liability' by

setting a ... ceiling, and distribute[s] that recovery by making 'essential

allocation decisions' among categories of claims." *Id.* at 250 (quoting

*Amchem*, 521 U.S. at 627). In addition, the inclusion of more valuable

23

Category A and B claims creates "'disparate interests'" within the class. *Id.* at 250 (quoting *Ortiz*, 527 U.S. at 857).

Because the Settlement capped recovery, named plaintiffs owning claims in all three categories lacked an interest in maximizing compensation for each category. Any improvement in the compensation of Category C claims, for example, would result in a commensurate decrease in the recovery available for Category A and B claims—without having any effect on the named plaintiffs' recoveries. *Id.* at 252.

According to the Second Circuit, the question was not whether the settlement was fair as a whole, but whether there was any way to assess the treatment of the claimants in the objecting category. "We know that Category C claims are worth less than the registered claims, but not by how much. Nor can we know this, in the absence of independent representation." *Id.* at 253.

> [H]ow can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case? It is for this reason that the participation of impartial mediators and institutional plaintiffs does not compensate for the absence of independent representation. Although the mediators safeguarded the negotiation process, and the institutional plaintiffs watched out for the interests of the class as a whole, no one advanced

24

the strongest arguments in favor of Category C's
recovery. Even in the absence of any evidence
that the Settlement disfavors Category C-only
plaintiffs, this structural flaw would raise serious
questions as to the adequacy of representation
here.

*Id.*

The court of appeals held that even if it were to conclude that the

Settlement fairly compensated all class members, certification would

still be improper because adequacy of representation cannot be

determined solely by finding that the settlement met the aggregate

interests of the class or "fairly" compensated the different types of

claims at issue.

Even if we were to conclude that, as a matter
of deferential review, the Settlement fairly
compensates Category C claims, we cannot rely
on that fact to affirm class certification, because
doing so would conflate Rule 23(a)(4)'s adequacy
of representation analysis with Rule 23(e)(2)'s
fairness, adequacy, and reasonableness analysis.
... The possible fairness of a settlement cannot
eclipse the Rule 23(a) and (b) precertification
requirements.

*Id.* at 254.

Instead, the question is whether the interests of all class members

were adequately represented, and the interests of the objecting category

of class members could only be protected by the formation of a sub-class

and representation by independent counsel. *Id.* Because the proposed settlement did not provide these safeguards, the district court abused its discretion by approving the settlement. *Id.*

## II. Because the Minor Subclass Lacked Unconflicted Representation, Approval of the Proposed Settlement Was An Abuse of Discretion

The proposed settlement in this case creates the same kinds of conflicts *Amchem* and its progeny held are fatal to class settlements. It "confine[s] compensation and ... limit[s] defendants' liability' by setting a ... ceiling, and distributed that recovery by making "essential allocation decisions' among categories of claims." *Amchem*, 521 U.S. at 627. In addition, the inclusion of more valuable minors' claims creates "disparate interests" within the class. *Ortiz,* 527 U.S. at 857. These conflicting, disparate interests required appointment of separate and independent counsel for the minor subclass. Instead, however, the district court appointed counsel to represent the entire proposed class. (ECF No. 252 at 3, EOR 28). Without separate representation for the minor subclass, "adequate structural assurances" were not present, notwithstanding the formally designated subclasses. *See Literary Works,* 654 F.2d at 251-55. As a result, the district court's approval of

the proposed settlement was an abuse of discretion.

Faced with these (and other) non-frivolous objections (ECF No. 314 at 4-7, EOR 265), the district court failed to apply Rule 23's adequacy requirement "comprehensively" and give "a reasoned response" to the objections. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Rather, the court's discussion of adequacy was relegated to a footnote remarking that it rests on the "untested" view that the minors' claims are substantially stronger. (ECF No. 359 at 13 n.15, EOR 14). That assement is not only wrong, it misses the point.

The minor objectors did not bear the burden of proving their claims were "substantially stronger"; they just need to be different in a way that arguably makes them stronger. As the Second Circuit explained in *Literary Works*, the problem with trying to assess the relative strength of demonstrably different claims is that the subclass with different claims did not have unconflicted counsel to champion their claims. To paraphrase *Literary Works*, "[w]e know that [adult] claims are worth less than the [minor] claims, but not by how much. Nor can we know this, in the absence of independent representation." *Literary Works*, 654 F. 3d at 253. "Only the creation of subclasses, and the advocacy of

27

an attorney representing each subclass, can ensure that the interests of

that particular subgroup are in fact adequately represented." *Id*. Had

the minor subclass had such representation the strength of those claims

would be clear.

### A. The Claims of the Minor Subclass Are Different—And Stronger— Than the Claims of Adult Class Members Like Plaintiffs.

Facebook does not dispute that it uses the names and pictures of its

users to advertise commercial products. Instead, Facebook contends

that its users agree to the commercialization of their identity because

Facebook's non-negotiable terms provide:

> your name and profile picture may be associated
> with commercial, sponsored, or related content
> (such as a brand you like) served or enhanced by
> us. You give us permission to use your name and
> profile picture in connection with that content,
> subject to the limits you place.

Facebook's Statement of Rights and Responsibilities (SRR) at ¶ 10.

The claims of the adult class are based on the wording of Facebook's

Statement of Rights and Responsibilities and the timing of their

consent. As the district court explained their theory:

> Plaintiffs here contend that they never consented
> in any form to the use of their names or
> likenesses in Sponsored Stories, noting that
> Sponsored Stories were not even a feature of

> Facebook at the time they became registered members, and alleging that Plaintiffs were never asked to review or renew their Terms of use subsequent to Facebook's introduction of the Sponsored Stories feature, which operates on an opt-out basis. The gravamen of Plaintiffs' consent argument is that even if the Statement of Rights and Responsibilities can be broadly construed to encompass Sponsored Stories, such "consent" was fraudulently obtained and thus not knowing and willful.

(Order on Motion to Dismiss, ECF No. 74 at 23-24, EOR 60-61). The difficulties presented with this theory are detailed by Facebook in its Motion to Dismiss and its Opposition to Class Certification. (*See* ECF Nos. 30, 57, 141). By themselves, these claims were unlikely to survive summary judgment or merit class certification. The minor subclass, however, has much stronger claims.

First, as recognized by Class Counsel, Code § 3344 requires consent to use a minor's name and likeness be obtained from her parent or guardian. (Second Am. Compl. ECF No. 22, EOR 113, at ¶ 80). Likewise, California law forbids minors from entering into contracts that purport to "give a delegation of power" or that relate to "any personal property not in the immediate possession or control of a minor." Cal. Fam. Code § 6701. American law has long recognized that

29

"during the formative years of childhood and adolescence, minors often lack ... experience, perspective, and judgment," as well as "the ability to make fully informed choices that take account of both immediate and long-range consequences." *Bellotti v. Baird*, 443 U.S. 622, 635, 640 (1979). In fact, "as any parent knows ..., a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults .... These qualities often result in impetuous and ill-considered actions and decisions." *Roper v. Simmons*, 543 U.S. 551, 569 (2005).

For these reasons, Congress and most states have limited the rights and duties of minors, "restricting certain choices that we feel they are not yet ready to make with full benefit of the costs and benefits attending such decisions." *Thompson v. Oklahoma*, 487 U.S. 815, 825 n.23 (1988). Almost every state prohibits those under the age of eighteen from voting, serving on juries, making a will, or marrying without parental consent. These are the same kinds of reasons California prohibits minors from entering into contracts that purport to "give a delegation of power" or that relate to "any personal property not in the immediate possession or control of a minor." Cal. Fam. Code §

6701.

Facebook's SRR clearly attempts to delegate authority to Facebook: "You give us permission to use your name and profile picture..." As the court explained in *People v. Howard*, 31 Cal. App. 358, 367 (1916), "'[p]ermission' to do an act is 'authority' to do it." Facebook's SRR attempts to delegate "authority" to Facebook to use Plaintiffs' name and likeness. *See also Sisco v. Cosgrove*, 51 Cal. App. 4th 1302, 1307 (1996) ("a minor cannot contract with respect to a future interest"). Likewise, the right to control the commercial use of one's name and likeness is a "property right." *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 818-19 (1979). Moreover, such intangible property rights are not "in the immediate possession or control" of a minor. *Morgan v. Morgan*, 220 Cal. App. 2d 665, 675 (1963) (right to future wages are not personal property in a minor's possession); *see also ETW Corp. v. Jireh Publ'g*, 332 F.3d 915, 928 (6th Cir. 2003) ("the right of publicity is an intellectual property right").

A contract that is contrary to Code § 6701 is "absolutely void, with no necessity to disaffirm [it] to avoid [its] apparent effect."[5] *Hakes Inv. Co.*

---

[5] California law also makes the SRR voidable at the minor's election.

*v. Lyons*, 137 P. 911, 912 (Cal. 1913); *Duffens v. Valenti*, 161 Cal. App. 4th 434, 451 (2008) ("Contracts that are contrary to express statutes or to the policy of express statutes … are illegal contracts. Any such illegality voids the entire contract."). Neither waiver nor ratification applies to void contracts because they are unenforceable as a matter of law. Restatement (Second) of Contracts §§ 7, 8 (1981); *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 511 (1998).

Unlike adults, minors are thus legally incapable of "consenting" to Facebook's commercialization of their identity *because they are minors*. Because minors cannot consent to Facebook's SRR, their claims are simply not subject to the same "consent" defense that adult class members faced. Contrary to the district court's suggestion that such minor claims are "untested," the same court recently held that similar claims on behalf of minor Facebook users are meritorious. *See I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1001 (N.D. Cal. 2012)

---

California Family Code § 6710. "Under California law, a minor may 'disaffirm all obligations under a contract, *even for services previously rendered*, without restoring consideration or the value of services rendered to the other party.'" *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1001 (N.D. Cal. 2012) (emphasis in *Fife*) (*quoting Deck v. Spartz, Inc.*,2011 WL 7775067, *7 (E.D. Cal. Sep. 27, 2011) (*citing Berg v. Traylor*, 148 Cal. App. 4th 809 (2007)).

(holding that the minors' agreements with Facebook were void because they concerned a contract "relating to any personal property not in the immediate possession or control of the minor").

Likewise, the minors' claims against Facebook here have merit and value that are clearly different from the adult claims, yet that value was neither reflected in the terms of the proposed settlement nor adequately protected through "structural assurances"—in other words, separate, independent representation—in the settlement process. Instead, under the terms of the proposed settlement, the minor sub-class with stronger claims would not only receive the same minuscule monetary relief as the adult sub-class, but also have its recovery held hostage to the claims rate of the larger adult class. Indeed, the very decision to treat minor and adult claims the same is itself an allocation decision requiring separate representation. *See Ortiz*, 527 U.S. at 857.

Like the self-funded plans in *Central States*, the minors would rationally argue that the adults should not receive *any* part of the settlement fund. This conflict is not "a simple disagreement over potential differences in the computation of damages." Instead, the conflict goes to the very heart of the litigation – the parties' relationship

33

to Facebook and their ability to consent to Facebook's use of their name and likeness.

## CONCLUSION

The district court's approval of the proposed settlement was an abuse of discretion. This Court should reverse.


Dated: March 14, 2014

Aaron M. Zigler
**KOREIN TILLERY LLC**
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
Tel: (314) 241-4844
Fax: (314) 241-3525

34

## STATEMENT OF RELATED CASES

The following appeals are related and have been consolidated with this appeal: 13-16819, 13-16918, 13-16919, 13-16929, 13-16936, 13-17028, 13-17097.

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)

The undersigned, counsel of record for the Appellants, furnishes the following in compliance with F.R.A.P Rules 28.1(e)(2)(B) and 32(a)(7):

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)((2)(B) and 32(a)(7)(B) because it contains 6,141 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). Rule 32(a)(7)(B) sets a limit of 14,000 words for the appellant's principal brief.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in fourteen-point Century font in both the body and the footnotes.

Dated: March 14, 2014

Aaron M. Zigler
**KOREIN TILLERY LLC**
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
Tel: (314) 241-4844
Fax: (314) 241-3525
*Attorneys for the Plaintiffs-Appellants*

36

## PROOF OF SERVICE

I hereby certify that on March 14, 2014, I electronically filed the
foregoing with the Clerk of the Court for the United States Court of
Appeals for the Ninth Circuit by using the CM/ECF system.

I further certify that all participants in the case are registered
CM/ECF users and that service will be accomplished by the appellate
CM/ECF system.

Dated: March 14, 2014

Aaron M. Zigler
**KOREIN TILLERY LLC**
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri 63101-1625
Tel: (314) 241-4844
Fax: (314) 241-3525
*Attorneys for the Plaintiffs-
Appellants*