# No. 13-16819

**(Consolidated with Nos. 13-16918, -16919, -16929, -16936, -17028 & -17097)**

## In the United States Court of Appeals for the Ninth Circuit

ANGEL FRALEY, et al.,
*Plaintiffs-Appellees*,

C.M.D., et al.,
*Intervenors-Plaintiffs-Appellees*,

**JO BATMAN**, et al.,
*Objectors-Appellants*,

v.

**FACEBOOK, INC.**,
*Defendant-Appellee*.

ON APPEAL FROM U.S. DISTR. CT. FOR THE NORTHERN DISTRICT OF CALIFORNIA
(HON. RICHARD SEEBORG, U.S. DISTR. J.)

## BRIEF FOR AMICUS CURIAE FEDERAL TRADE COMMISSION IN SUPPORT OF NEITHER PARTY

*Of Counsel:*

JESSICA RICH
   *Director*
Bureau of Consumer Protection




March 20, 2014

JONATHAN E. NUECHTERLEIN
   *General Counsel*
JOHN F. DALY
   *Deputy General Counsel for Litigation*
IMAD D. ABYAD
   *Attorney*
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2375
iabyad@ftc.gov

# TABLE OF CONTENTS

INTRODUCTION ....................................................................... 1

INTEREST OF THE FEDERAL TRADE COMMISSION....................................... 2

STATUTORY BACKGROUND............................................................... 4

ARGUMENT ............................................................................. 6

    I.    COPPA's Express Preemption Provision Is Inapplicable...................... 6

    II.    Appellants' State Law Claims Are Not Subject to
        Implied Preemption ................................................................. 8

CONCLUSION .........................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                         **Page**

*Arizona v. United States*,
    __ U.S. __, 132 S. Ct. 2492 (2012) ............................................................13

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)...........................................................................7

*CSX Transp., Inc. v. Easterwood*,
    507 U.S. 658 (1993)...........................................................................7

*Florida Lime & Avocado Growers, Inc. v. Paul*,
    373 U.S. 132 (1963)...........................................................................8

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995)...........................................................................9

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000)...........................................................................8

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ...........................................................7

*Hines v. Davidowitz*,
    312 U.S. 52 (1941)............................................................................9

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)...........................................................................7

*Officers for Justice v. Civil Service Comm'n of City and
    County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................6

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947).......................................................................11, 13

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002)........................................................................8, 10

**Cases (Cont'd)**                                                      **Page**

*United States v. Artist Arena LLC*,
    No. 1:12-cv-07386-JGK (S.D.N.Y. Oct. 3, 2012)...........................................3

*United States v. Playdom, Inc.*,
    No. SA-cv-11-0724 (C.D. Cal. May 24, 2011) ................................................3

*United States v. RockYou, Inc.*,
    No. 3:12-cv-01487-SI (N.D. Cal. Mar. 27, 2012) ..........................................3

*United States v. Sony BMG Music Entertainment*,
    No. 08-cv-10730 (S.D.N.Y. Dec. 15, 2008)...................................................3

*United States v. Xanga.com, Inc.*,
    No. 06-cv-6853 (SHS) (S.D.N.Y. Sep. 11, 2006) ..........................................3

*Williamson v. Mazda Motor of America*, Inc.,
    __ U.S. __, 131 S. Ct. 1131 (2011) ............................................................10

*Wyeth v. Levine*,
    555 U.S. 555 (2009).................................................................................4, 9

**Statutes & Regulations**

Pub. L. 105-277, title XIII, 112 Stat. 2681 (Oct. 21, 1998).......................................2

    § 1303(d)..................................................................................................7

15 U.S.C. §§ 6501 et seq...........................................................................................1

15 U.S.C. § 6501(1) .............................................................................................5, 7

15 U.S.C. § 6502(a)(1)..........................................................................................5, 7

15 U.S.C. § 6502(b)(1)...........................................................................................2, 5

**Statutes & Regulations (Cont'd)** **Page**

15 U.S.C. § 6502(c) ...................................................................................2, 5

15 U.S.C. § 6502(d) ................................................................................5, 7, 8

15 U.S.C. § 6504(a) .......................................................................................5

15 U.S.C. § 6504(a)(1) ..................................................................................12

15 U.S.C. § 6505(a) .......................................................................................2

16 C.F.R. Part 312 ......................................................................................3, 5

**Miscellaneous**

64 Fed. Reg. 22750 (Apr. 27, 1999) ..............................................................5

64 Fed. Reg. 59888 (Nov. 3, 1999) ...............................................................3

67 Fed. Reg. 18818 (Apr. 17, 2002) ..............................................................3

70 Fed. Reg. 21104 (Apr. 22, 2005) ..............................................................3

78 Fed. Reg. 3972 (Jan. 17, 2013) .................................................................3

144 Cong. Rec. S8482 (July 17, 1998) ..........................................................2

144 Cong. Rec. S11657 (Oct. 7, 1998) ......................................................4, 12

S. 2326, 105th Cong. (1998) .......................................................................10

*S. 2326: Children's Online Privacy Protection Act of 1998*,
    Hearing before Senate Subcommittee on Communications,
    S. Hrg. 105-1069 (Sept. 23, 1998)......................................................2, 10, 11

iv

**Miscellaneous (Cont'd)** **Page**

Federal Trade Commission,
>   *Implementing the Children's Online Privacy Protection
>   Act: A Report to Congress* (February 2007)......................................3

Federal Trade Commission,
>   *Privacy Online: A Report to Congress* (June 1998).......................2

*Protecting Children's Privacy Under COPPA: A Survey
>   on Compliance*, FTC Staff Report (April 2002).............................3

*Protecting Kids' Privacy Online: Reviewing the COPPA Rule*,
>   FTC Public Roundtable (June 2, 2010) ...........................................3

*The Children's Online Privacy Protection Rule: A Six-Step
>   Compliance Plan for Your Business*,
>   FTC Business Guide (July 2013)......................................................3

# INTRODUCTION

In this case, a putative class claimed that Facebook's program "Sponsored Stories"—wherein Facebook users' names and images are allegedly deployed for advertisements without their consent—violates California's privacy and unfair competition laws. Facebook agreed to a settlement with class counsel, but a number of class members objected to the terms of that settlement. They argued, among other things, that the settlement "does not *ensure* valid parental consent to a minor's participation in Sponsored Stories." Op. 12. The district court dismissed that objection in part because, in its view, the Children's Online Privacy Protection Act (COPPA), 15 U.S.C. §§ 6501 et seq., may "bar any efforts by plaintiffs to use state law to impose a parental consent requirement for minors over the age of 13." Op. 13.[1] The Federal Trade Commission submits this amicus brief to oppose that view of federal preemption. Nothing in COPPA's language, structure, or legislative history indicates that Congress intended for that law to preempt state law privacy protections for people outside of COPPA's coverage, including teenagers.

---

[1] "Facebook forbids children under age 13 from using its site." Facebook, Inc.'s Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement [Dkt. #351] (hereinafter, *Facebook Memo ISO Final Settlement*) at 24. Thus, the subclass of Facebook users to whom a state law parental consent requirement would apply consists of teenagers.

1

## INTEREST OF THE FEDERAL TRADE COMMISSION

The Federal Trade Commission, an independent agency of the United States Government, protects consumer interests by, among other things, enforcing consumer protection laws and conducting studies of industry-wide consumer protection issues. One such study formed the basis for the legislative efforts that culminated in COPPA's enactment. *See* Federal Trade Commission, *Privacy Online: A Report to Congress* (June 1998); 144 Cong. Rec. S8482 (July 17, 1998) (Statement of Senator Bryan). The legislation "drew heavily from the recommendations and findings of the FTC's June [1998] report on Internet privacy." *S. 2326: Children's Online Privacy Protection Act of 1998*, Hearing before Senate Subcommittee on Communications, S. Hrg. 105-1069 (Sept. 23, 1998) (hereinafter *Senate Hearing on COPPA*) at 3 (Statement of Senator Burns).[2]

Congress assigned principal responsibility for COPPA's enforcement to the FTC and authorized the Commission to promulgate implementing regulations. *See* 15 U.S.C. §§ 6505(a), 6502(b)(1), 6502(c). Pursuant to this congressional mandate, the FTC has promulgated its Children's Online Privacy Protection Rule

---

[2] COPPA was enacted as Title XIII of the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105-277, 112 Stat. 2681, 728-735 (Oct. 21, 1998), *reprinted at* 144 Cong. Rec. H11240-42 (Oct. 19, 1998) (Codified at 15 U.S.C. §§ 6501-6506).

(COPPA Rule), 16 C.F.R. Part 312. *See* 64 Fed. Reg. 59888 (Nov. 3, 1999).[3] The FTC has brought numerous enforcement actions for violations of its COPPA Rule since it took effect in April 2000.[4] The FTC has also conducted various studies and workshops and has issued a number of reports concerning the impact of the legislation (and its implementing regulations) on businesses and consumers.[5]

In short, the FTC has a strong interest in the proper construction and application of COPPA, including its preemptive impact. Moreover, the views of the agency tasked with administering a statute are relevant to any judicial inquiry into the preemptive effect of that statute. "While agencies have no special

---

[3] The COPPA Rule has been amended a number of times since then, most recently in 2013. *See* 78 Fed. Reg. 3972 (Jan. 17, 2013); 70 Fed. Reg. 21104 (Apr. 22, 2005); 67 Fed. Reg. 18818 (Apr. 17, 2002).

[4] *See, e.g. United States v. Artist Arena LLC*, No. 1:12-cv-07386-JGK (S.D.N.Y. Oct. 3, 2012) (consent decree) (music fan clubs and newsletters); *United States v. RockYou, Inc.*, No. 3:12-cv-01487-SI (N.D. Cal. Mar. 27, 2012) (consent decree) (online slideshow); *United States v. Playdom, Inc.*, No. SA-cv-11-0724 (C.D. Cal. May 24, 2011) (consent decree) (online virtual worlds); *United States v. Sony BMG Music Entertainment*, No. 08-cv-10730 (S.D.N.Y. Dec. 15, 2008) (consent decree) (music fan websites); *United States v. Xanga.com, Inc.*, No. 06-cv-6853 (SHS) (S.D.N.Y. Sep. 11, 2006) (consent decree) (social networking site).

[5] *See, e.g.*, Federal Trade Commission, *Implementing the Children's Online Privacy Protection Act: A Report to Congress* (February 2007); *Protecting Children's Privacy Under COPPA: A Survey on Compliance*, FTC Staff Report (April 2002); *The Children's Online Privacy Protection Rule: A Six-Step Compliance Plan for Your Business*, FTC Business Guide (July 2013); *Protecting Kids' Privacy Online: Reviewing the COPPA Rule*, FTC Public Roundtable (June 2, 2010).

authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'." *Wyeth v. Levine*, 555 U.S. 555, 576-77 (2009) (citations omitted). That said, the Commission takes no position on the ultimate merits of this case and limits its views here to the question of whether COPPA preempts state law protections of teenagers' online privacy.

## STATUTORY BACKGROUND

In the words of its principal sponsor, COPPA is designed "(1) to enhance parental involvement in a child's online activities in order to protect the privacy of children in the online environment; (2) to enhance parental involvement to help protect the safety of children in online fora such as chatrooms, home pages, and pen-pal services in which children may make public postings of identifying information; (3) to maintain the security of personally identifiable information of children collected online; and (4) to protect children's privacy by limiting the collection of personal information from children without parental consent." 144 Cong. Rec. S11657 (Oct. 7, 1998) (Statement of Senator Bryan).

4

To meet those objectives, Congress directed the FTC to adopt detailed regulations governing the collection and use of personal information from and about children online.  15 U.S.C. § 6502(b)(1); *see* 64 Fed. Reg. 22750 (Apr. 27, 1999) (Notice of Proposed Rulemaking); 16 C.F.R. Part 312 (COPPA Rule).  The statute declares it "unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates [those FTC] regulations."  15 U.S.C. § 6502(a)(1).[6]

Two provisions define COPPA's preemptive scope for purposes of this case.  First, the statute's express preemption clause provides:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).  Second, COPPA defines the term "child" to mean "an individual under the age of 13."  *Id*. § 6501(1).  Because COPPA addresses only

---

[6] The statute authorizes the FTC to bring enforcement actions for violations of its COPPA Rule in the same manner as for other FTC rules defining unfair or deceptive acts or practices under the Federal Trade Commission Act.  15 U.S.C. § 6502(c).  In addition, COPPA authorizes state attorneys general to enforce compliance with the COPPA Rule by filing actions in federal district courts after serving prior written notice upon the FTC when feasible.  *Id*. § 6504(a).

the welfare of "children," that statutory definition circumscribes the substantive coverage of this statutory scheme.

## ARGUMENT

The district court rightly recognized that "COPPA requires an operator of a website or online service to obtain parental consent before it collects or uses the personal information of a child, but only where the child is under the age of 13." Op. 12-13 (citations, quotation marks, and alteration brackets omitted). But the court also stated that, because Congress did not extend COPPA's provisions to teenagers, the statute "may well" be construed to bar the States from enacting any protections for teenagers. *Id.* Because the court made that statement in dismissing objections to a proposed settlement, the statement cannot be viewed as a decision on the merits. *See Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Nonetheless, the statement is wrong and should be rejected. Nothing in the language, structure, or legislative history of COPPA evinces a congressional intent to displace state protections of teenagers' online privacy in their entirety.

## I.  COPPA's Express Preemption Provision Is Inapplicable

The district court apparently based its suggestion of COPPA preemption on the statute's express preemption provision. *See* Op. 13 (quoting 15 U.S.C.

§ 6502(d)). While that provision obviously displaces "at least some state law," a court "must nonetheless 'identify the domain expressly pre-empted' by that language." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992)); *accord Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009). That "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993).

That language suggests no congressional intent to preempt protections for teenagers. Section 6502(d) defines the class of preempted "commercial activities or actions by operators" as those taken "in connection with an activity or action *described in this chapter*." (Emphasis added.) The term "chapter" refers to the COPPA statute in its codified form—i.e. 15 U.S.C. §§ 6501-6506 ("chapter 91— children's online privacy protection").[7] Each of the relevant provisions in that statute addresses activities involving "children" or "a child." *E.g.*, 15 U.S.C. § 6502(a)(1). And COPPA specifically defines "child" as "an individual under the age of 13." 15 U.S.C. § 6501(1). As to *those* individuals, no State "may impose

---

[7] As originally enacted, the preemption provision referred to "an activity or action described in this title." Pub. L. 105-277, title XIII, § 1303(d), 112 Stat. 2681-732 (Oct. 21, 1998).

any liability * * * that is inconsistent with the treatment of those activities or actions under this section." *Id*. § 6502(d).  The preemption provision does not, however, address state law protections for the online activities of teenagers.  Those activities, by definition, fall outside the statute's scope, and there is thus no "treatment" of them with which state law may be "inconsistent."

The district court's contrary suggestion—seemingly based on the express language of the statute—is thus patently wrong.  The court simply misconstrued the phrase "treatment of those activities and actions" in section 6502(d) as referring to the online activities and actions of *all* minors, regardless of age.  But that view improperly reads the modifier "described in this chapter" out of the preemption provision.

## II.    Appellants' State Law Claims Are Not Subject to Implied Preemption

Of course, even in the absence of express preemption, state law may still be preempted, by implication, under the principles of conflict preemption.  *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 65 (2002) ("Congress' inclusion of an express pre-emption clause 'does *not* bar the ordinary working of conflict pre-emption principles'.") (quoting *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869 (2000)).  Conflict preemption applies where it is "impossible" for a private party to comply with both state and federal requirements, *see*, *e.g., Florida*

*Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-143 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). But neither circumstance is present in this case.

First, "[i]mpossibility pre-emption is a demanding defense," *Wyeth*, 555 U.S. at 573, and it is plainly inapplicable here. A private party can readily comply both with COPPA's protections for children under 13 and with any state law requirement applicable to teenagers, given that those two categories of minors are mutually exclusive. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 289 (1995) ("[I]t is not impossible for petitioners to comply with both federal and state law because there is simply no federal standard for a private party to comply with.").

Second, state teenage parental consent requirements would not obstruct "the full purposes and objectives of Congress" in enacting COPPA. *Hines*, 312 U.S. at 67. In arguing otherwise, Facebook stressed below that an initial Senate version of the COPPA bill would have extended the definition of "child" to some minors older than 13, and it suggested that Congress' subsequent decision to exclude teenagers from COPPA's scope implies that Congress wished to nullify all *state-law* protections for teenagers as well. *See Facebook Memo ISO Final Settlement*,

9

at 23-24.[8]  But that inference is wholly unwarranted.  As the Supreme Court has

explained in analogous contexts, "[i]t is quite wrong to view" a federal decision

not to regulate a particular subject area "as the functional equivalent of a [decision]

prohibiting all States and their political subdivisions from adopting such a

regulation."  *Sprietsma*, 537 U.S. at 65; *see also Williamson v. Mazda Motor of

America, Inc.*, __ U.S. __, 131 S. Ct. 1131 (2011).

There is also nothing in the legislative history of COPPA to support an

inference of preemption.  Although some congressional witnesses proposed

distinctions in the rules that should govern younger children and teenagers, no

witness suggested that teenagers needed no protection whatsoever under any

source of law.  *See, e.g.*, *Senate Hearing on COPPA*, at 13 (Statement of FTC

Chairman Robert Pitofsky) ("It may very well be that you would want to have

different rules, for example, opt-in as opposed to opt-out, with 13- to 16-year-

olds"); 31 n.8 (Statement of Deirdre Mulligan, Center for Democracy and

Technology) ("We are working with the Subcommittee to craft privacy protections

_____

[8] That Senate bill would have extended the definition of "child" to those "under the age of 16." Although the bill would have required "verifiable parental consent" for children under the age of 13, as the statute currently does, it would have demanded only "reasonable efforts to provide the parents with notice and an opportunity to prevent or curtail the collection or use of personal information collected from children over the age of 12 and under the age of 17."  S. 2326, 105th Cong. §§ (2)(1), 3(a)(2)(A)(ii)-(iii) (1998).

10

for older minors that will respect their privacy and assure their First Amendment interests are protected"); 40 (Statement of Kathryn Montgomery, Center for Media Education) ("the bill must provide adequate and age-appropriate privacy protections for teenagers (13-16). * * * Teenagers do not suddenly become more privacy savvy once they turn 13.").  Moreover, the FTC—on whose analysis COPPA was based—viewed the legislation as providing only "a basic level of privacy protection for children." *Id*. at 12 (Prepared Statement of Robert Pitofsky, Chairman, Federal Trade Commission).  Thus, COPPA's legislative history reveals, at most, Congress' reluctance to subject teenagers' online activities to the *same* regulations as the activities of younger children as a matter of federal law. But it manifests no intent to preempt all state regulation of that field.  *See also infra* at 12-13.

To the contrary, COPPA was enacted in the shadow of state privacy laws— including state protections that are particular to minors—that had existed for nearly a century.  *See* Brief of Amici Curiae Center for Digital Democracy et al., at 8-12; Brief of Amicus Curiae Electronic Privacy Information Center, at 3-6.  Having thus decided to "legislate[] * * * in a field which the States have traditionally occupied," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), Congress

11

can hardly have intended to displace this vast body of state statutory and common law beyond the limited scope of preemption set forth expressly in section 6502(d).

Indeed, COPPA expressly contemplates a significant role for the States in protecting children's online privacy—by authorizing them to enforce the statute's implementing regulations. *See* 15 U.S.C. § 6504(a)(1) (authorizing state attorneys general to bring civil actions for violations of the COPPA Rule). Although this provision is directed at enforcement of the federal statute, Congress' carve-out of a state role in enforcement of even COPPA's own implementing regulations illustrates its view of the States as partners in its endeavor "to protect the privacy of children in the online environment," 144 Cong. Rec. S11657 (Oct. 7, 1998) (Statement of Senator Bryan), rather than as potential intruders on an exclusively federal arena. In other words, state law protections of teenagers' online privacy *complement*—rather than obstruct—Congress' "full purposes and objectives" in enacting the statute.

Finally, "field preemption" principles are also inapplicable, for essentially the same reasons. For such "field preemption" principles to apply, the "framework of regulation [must be] 'so pervasive ... that Congress left no room for the States to supplement it'," or there must exist "a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same

12

subject'." *Arizona v. United States*, __ U.S. __, 132 S. Ct. 2492, 2501 (2012)

(quoting *Rice,* 331 U.S. at 230).  Again, COPPA and its implementing Rule

manifestly do not constitute a regime of online privacy regulations "so pervasive

* * * that Congress left no room for the States to supplement it," *Rice,* 331 U.S. at

230, particularly as to teenagers, who fall outside of COPPA's scope.

## CONCLUSION

This Court should reject the district court's erroneous views of COPPA

preemption, irrespective of how it otherwise decides this case.

Respectfully submitted,


*Of Counsel:*

JESSICA RICH
   *Director*
Bureau of Consumer Protection

JONATHAN E. NUECHTERLEIN
   *General Counsel*
JOHN F. DALY
   *Deputy General Counsel for Litigation*


  /s/ Imad Abyad
_____

IMAD D. ABYAD
   *Attorney*
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, DC 20580
(202) 326-2375
iabyad@ftc.gov

March 20, 2014

13

## CERTIFICATE OF COMPLIANCE

I certify that this amicus brief complies with the type-volume limitations of Fed. R. App. P. 29(d) and 32(a)(7)(B)(i), because it contains 2,880 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I also certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)(A) and 32(a)(6), respectively, because it has been prepared in a proportionally spaced typeface, using the Microsoft Word 2010 word-processing system, the Times New Roman type style, and 14-point font size.

/s/ Imad Abyad     3/20/2014

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2014, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, using the Court's Appellate CM/ECF system. All participants in this case are registered CM/ECF users, and service will, therefore, be accomplished by the Court's Appellate CM/ECF system.


/s/ Imad Abyad     3/20/2014